## HUMPHREY et al. v. COQUILLARD WAGON WORKS.

### No. 2713. Opinion Filed June 20, 1913.

#### (132 Pac. 899.)

1. **COURTS—Jurisdiction—Amount.** The district court (concurrent with the county court) has jurisdiction of an action on a note for $500, which contains a provision that the makers will pay ten per cent attorney's fees in case of suit.

2. **SAME—Attorney's Fee.** Where it is provided in a note that a certain amount shall be added for attorney's fees in case the note is not paid at maturity, such fees are to be included in determining the jurisdiction of the court with reference to the amount involved.

3. **SAME—Interest.** Interest forms no part of the amount in controversy, so far as affecting jurisdiction is concerned, when the statute defining the court's jurisdiction excludes it *eo nomine* from computation.

4. **CORPORATIONS—Action—Service of Process—Proof.** Service of summons examined, and held to be sufficient to sustain a personal judgment.

5.  FRAUDULENT CONVEYANCES—Constitutional Law—Bulk Sales
    —Class Legislation—Freedom of Contract—Due Process—Police
    Powers. The act commonly known as "The Bulk Sales Law"
    (chapter 56, art. 1, Sess. Laws, 1907-08 [Comp. Laws 1909, sec.
    7908]) is valid, is within the police powers of the state, and is
    not violative of either the federal or state Constitution.

6.  SAME—"Assignment." The word "assignment," as used in the
    sentence, "Transfers under this act shall include sales, exchanges
    and assignments," etc. (section 7910, Comp. Laws 1909), means a
    transfer or setting over of property or some right or interest
    therein from one person to another; the term denoting not only
    the act of transfer but also the instrument effecting it.

7.  SAME—"Assignment for the Benefit of Creditors." The clause
    "assignees under a voluntary assignment for the benefit of
    creditors," etc., as found in section 7910, Comp. Laws 1909,
    has reference to and means the statutory assignment for the
    benefit of failing debtors and not the assignment referred to in
    the preceding paragraph.

8.  SAME—The so-called assignment mentioned and described in this
    case was not such an assignment as is provided for in section
    7910, Comp. Laws 1909, but was in direct violation thereof and
    was void as against creditors of the assignor.

    (Syllabus by Robertson, C.)

*Error from District Court, Custer County;
James R. Tolbert, Judge.*

Action by the Coquillard Wagon Works against the Brown Hardware Company and others, as garnishees. From judgment for plaintiff, the garnishees appeal. Affirmed.

The Brown Hardware Company was a domestic corporation operating a retail hardware store at Clinton, Okla. It owed the Coquillard Wagon Works, on account, a sum of money, which, by settlement on May 7, 1908, was merged into a promissory note in the sum of $500, drawing interest from date at 8 per cent. per annum, and which note also contained a provision for five per cent. attorney's fee. In August, 1908, the Brown Hardware Company, being insolvent, made an agreement with its larger creditors, except the Coquillard Wagon Works, whereby their stock of hardware, fixtures, etc., were transferred to E. A. Humphrey, one of the garnishees, as assignee or trustee, and who by agreement of the parties above

named was to sell the stock and divide the proceeds pro rata among the creditors of the Brown Hardware Company. The trustee, in about ten days after his appointment, sold the stock of hardware for cash to C. E. Gannaway for $3,071.70. At the time of the sale and for several months thereafter Humphrey, the trustee, knew nothing of the claim of the Coquillard Wagon Works against the Brown Hardware Company, and he in good faith endeavored to find all the creditors of the Brown Hardware Company. With the proceeds of the sale the trustee paid all the creditors of the said Brown Hardware Company (except the Coquillard Wagon Works) the sum of 51 cents on the dollar for their claims. On October 27, 1909, the Coquillard Wagon Works brought suit in the district court of Custer county on the note given it as aforesaid, joining as defendants the Brown Hardware Company and its stockholders, S. C. Brown, L. E. Yeo, and Frank Sommers. On November 1, 1909, the plaintiff in said action filed its affidavit in the district court in which it was shown that the Brown Hardware Company had dissolved and abandoned its corporate powers and its mercantile business, and that its stockholders, Brown, Yeo, and Sommers, were nonresidents of the state, and that personal service of summons could not be had upon them, and prayed for leave to summons them by publication. Service by publication was therefore had. On the 27th day of October, 1909, the plaintiff filed its garnishment affidavit, alleging among other things, the execution of the note hereinbefore mentioned, the dissolution of the corporation, and that Brown, Yeo, and Sommers were the only stockholders of the said corporation and were the owners of the assets thereof, subject to the rights of plaintiff as a creditor of said corporation, and that C. E. Gannaway and E. A. Humphrey, and each of them, were indebted to and had property and money in their possession and under their control belonging to the Brown Hardware Company and to the said Brown, Yeo, and Sommers, as its only stockholders, and prayed that a summons in garnishment be issued to the said E. A. Humphrey and C. E. Gannaway. A

summons in garnishment was accordingly issued on the same day and served on the said garnishees, who on the 29th day of October, 1909, filed separate answers, denying that they were in any manner or on any account indebted, or under any liability, to the said defendant, and that they did not have in their possession nor under their control any real estate or personal property belonging to the said defendants, and further denied that they were in any manner liable as garnishees in said action. On November 6th the plaintiff, Coquillard Wagon Works, filed with the clerk of the district court of Custer county its notice to take issue on the answers of the garnishees. On January 3, 1910, the garnishees filed their motion challenging the jurisdiction of the district court on the ground that the amount in controversy was exclusively within the jurisdiction of the county or superior court, and without the jurisdiction of the district court, which motion was overruled by the court, with exceptions to the garnishees. On November 4, 1909, the plaintiff filed its praecipe for an alias summons, which was issued on said day and directed to the sheriff for service on the defendants. This alias summons was returned by the sheriff on November 5, 1909, and shows personal services on the Brown Hardware Company. On July 1, 1910, the court rendered personal judgment, by default, against the defendants, Brown Hardware Company, a corporation, S. C. Brown, L. E. Yeo, and Frank Sommers, and all of them, in favor of the plaintiff, for the sum of $585.76 and $29.28 attorney's fees and all costs of suit. On the same day the cause was tried before the court without a jury on the answers of the garnishees, which trial resulted in a judgment "in favor of the plaintiff and against the said garnishees, and ordered, adjudged, and decreed that said garnishees pay into court the sum of money equal to the total sum and amount of plaintiff's judgment heretofore rendered by the court in this cause in favor of plaintiff and against the defendants on said note for $585.76 and attorney's fees of $29.28, as provided in the note, and all costs of this case," to which decision and judgment of the

court the garnishees then and there excepted, and at the prop-
er time filed a motion for a new trial, which was overruled by
the court, and time was taken in which to make and serve a
case-made, and this appeal is by the garnishees to reverse said
judgment and order of the district court.

Chas. T. Randolph, for plaintiffs in error.
Andrew J. Welch, for defendant in error.

Opinion by ROBERTSON, C. (after stating the facts as
above). The first proposition presented by counsel in their
brief is the alleged error of the court in overruling their mo-
tion to dismiss the cause for the reason that the district court
had no jurisdiction of the subject-matter of the controversy
between the plaintiff and defendants, and therefore said court
had no jurisdiction to try the issue between the plaintiff and
garnishees. The garnishees contend that, inasmuch as the note
sued on was for even $500, the district court has no jurisdiction
thereof, but that the jurisdiction for such a sum was vested ex-
clusively in the county court by virtue of section 1978, Comp.
Laws 1909 (Sess. Laws 1907-08, p. 284, c. 27), which pro-
vides that:

"The county court co-extensive with the county, shall have
original jurisdiction in all probate matters, shall have con-
current jurisdiction with the district court in civil cases in any
amount over five hundred dollars and not exceeding one thou-
sand dollars exclusive of interest, and exclusive original juris-
diction in all sums in excess of two hundred dollars and not
exceeding five hundred dollars." (Italics ours.)

Counsel for defendant in error insist that the district court
had jurisdiction of the subject-matter of this controversy under
this statute, for the reason that the note sued on contained
a provision of 5 per cent. attorney's fee, and argues that the
attorney's fee, being thus specific and definite, should be consid-
ered as a part of the sum sued for (the note being past due)
in fixing the jurisdiction of the court. We are inclined to agree
with counsel for defendant in error on this proposition, espe-
cially in view of the facts in this case. While it is important

that the jurisdiction of the court should not depend upon a computation, yet, where there can be no possible question as to the result of the computation, this rule ought not to apply. If the note contained a provision for a "reasonable attorney's fee," or for a fee to be fixed by the court, or one provided by statute, there might be some objection to this method of determining whether this court had jurisdiction of the subject-matter, but in the instant case the amount to be taxed as attorney's fee is a fixed and definite sum, ascertained, to be sure, by computation, but none the less definite and certain on that account.

The district court under the statute had jurisdiction of the suit if the attorney's fees are to be considered as a part of the principal debt sued on, otherwise it did not.

It has been repeatedly held in Texas under a constitutional provision almost identical with this statute that the district court did not have jurisdiction in an action to recover money of the exact amount of $500. *Railway Company* v. *Rambolt*, 67 Tex. 654, 4 S. W. 356; *Carroll v. Silk*, 70 Tex. 23, 11 S. W. 116; *Betterton v. Echols*, 85 Tex. 212, 20 S. W. 63; *Erwin v. Blanks*, 60 Tex. 583; *Carney v. Marsalis*, 77 Tex. 62, 13 S. W. 636; *Garrison v. Express Co.*, 69 Tex. 345, 6 S. W. 842. But the almost universal holding of the courts on this question is that, where the note or contract specifically fixes the amount to be paid as attorney's fees, such amount shall be considered in fixing the jurisdiction of the court and treated as though it was a part of the principal debt. Thus in *Blankenship et al. v. Wartelsky* (Tex.) 6 S. W. 140, it is said in the syllabus:

"Where a note sued upon authorizes the addition of 10 per cent. attorney's fees if it becomes necessary to collect the note at law, such attorney's fees are not in the nature of costs, but are to be considered a part of the matter in controversy in determining what court shall have jurisdiction of the suit."

In *Altgelt v. Harris* (Tex.) 11 S. W. 857, it was said:

"When the note was placed in the hands of an attorney for collection after its maturity, or when the suit was brought, the contingency upon which the attorney's fees were to be added to the debt had happened, and the attorney's fees be-

came a part of the debt, not in the nature of costs or ·interest, but as principal.  It has been held so several times in this state, and it has been held that the attorney's fees will be considered in determining the question of jurisdiction."

In *Moore v. Foy* (Tex. App.) 15 S. W. 199, in discussing this jurisdictional· question, it is said:

"The 10 per cent. attorney's fee stipulated for, in case the note should be placed in the hands of an attorney for collection, was as much a part of the debt to be paid, if so collected, as was the sum of money named in the note."

In *McRimmon v. Hart et al.,* 39 Tex. ·Civ. App. 474, 87 S. W. 881, it was said in the syllabus:

"Where a note provided for 10 per cent. attorney fees on 'the amount due,' in case of suit, such fees were to be computed on the sum of the principal· and interest, and where the principal, plus the attorney fees as so computed at the date of the suit, exceeded $200, the county court had jurisdiction; the amount in controversy being thus made as much as $200, 'exclusive of interest,' although, had the attorney's fees not been computed on the interest, the amount would have been below the jurisdictional limit."

In 11 Cyc. 780, the rule is stated as follows:

"Where it is provided in a note that a certain amount shall be added for attorney's fees in case the note is not paid at maturity, such fees are to be included in determining the jurisdiction of the court with reference to the amount involved."

See, also, *Miller et al. v. Mills et al.,* 32 Okla. 388, 122 Pac. 671.

The case of *Williams v. Harrison,* 27 Tex. Civ. App. 179, 65 S. W. 884, cited and relied upon by plaintiff in error, sustains this view, as a reading thereof readily discloses.  In that case the note was for $200 and interest, and 20 per cent. for attorney's fees.  The note was attached to the petition as an exhibit; the court held that, inasmuch as the petition contained no allegation of the promise to pay the attorney's fee, the same could not be supplied from the exhibit, and cited rule 19 of the court which reads:

"That notes and all other written instruments may be filed with the petition as exhibits and referred to and made·

a part of it, *but will not thereby relieve the pleader from making the proper allegations of which said exhibit may be the evidence in whole or in part*" (italics ours.)
—and held that the prayer of the petition was for $200 only, exclusive of interest, and therefore not within the jurisdiction of the county court for that the amount prayed for did not exceed $200, exclusive of costs.

The constitutionality of this statute has been recently considered and upheld by this court in *Poos v. Shawnee Fire Ins. Co., ante,* 130 Pac. 153. Also in *St. Paul Fire & Marine Ins. Co. v. Peck, ante,* 130 Pac. 805, and it is therefore unnecessary to give further consideration to that question.

In view of the foregoing authorities, we are clearly of the opinion that, while interest forms no part of the amount in controversy so far as affecting jurisdiction when the statute defining the court's jurisdiction exludes it *eo nomine* from computation (*St. Paul Fire & Marine Ins. Co. v. Peck, supra*), yet the attorney's fee, provided for in this note, does form a part of the principal debt for which the plaintiff sued, and this, together with the face of the note aggregating more than $500, brings the action clearly within the jurisdiction of the district court (and concurrent with the county court), and the motion to dismiss for want of jurisdiction was therefore properly overruled.

The second proposition urged by plaintiffs in error is:

"Service upon a defendant by publication will not give a court jurisdiction to enter a personal judgment."

This is a correct rule of law, but the facts in this case, as disclosed by the record, show affirmatively that personal service was had on the Brown Hardware Company. Thus, on page 13½ of the case-made is found the return of the sheriff on the alias summons and which reads as follows:

"Officer's Return Showing Service: This writ came to my hands the day it was issued, and I executed the same on the same day, as follows: The defendant Brown Hardware Company I found to be an Oklahoma corporation, and it having appointed no agent upon whom service can be made, I then

made diligent search but was unable to find in my county either the president, chairman of board of directors or other chief officer of said corporation, or its cashier, treasurer, secretary, clerk or managing agent, and being unable to find any of the above-named officers, I executed this summons on said corporation by leaving a true copy of this summons at the office and usual place of business of said corporation, with Chas. Howard, the person having charge thereof. I am unable to find the other defendants in my county. [Signed] E. L. Thomas, Sheriff."

The finding of the court on this point, as shown by the journal entry (pages 27, 28, and 29, case-made), is as follows: "* * * That the Brown Hardware Company, a corporation, was duly notified of the pendency of this action as required by law on November 4, 1909, as appears by the return of the sheriff on the alias summons herein, * * * which service the court finds to be proper and legal and good. * * * It is therefore ordered and decreed by the court that the plaintiff have and recover of defendants a judgment for $585.76 debt and $29.28 attorney's fees, and costs of this action, for all of which execution may issue."

This return of the sheriff, which is sufficient under the statute, and the finding and judgment of the court, based on said return, shows that personal service was, in fact, had on the defendant Brown Hardware Company. No objection to either the return or to the finding and judgment of the trial court was made in the court below, and the question is now raised by the garnishees in this court for the first time. Without passing upon their right to thus raise the question here, it is only necessary to refer to the record as quoted above to show that the contention of counsel on this point is wholly untenable and cannot be sustained.

It is also urged that the trial court erred in holding chapter 56, art. 1, Sess. Laws 1907-08, p. 557 (Comp. Laws 1909, sec. 7908), commonly called the "Bulk Sales Law," constitutional, for that the same is void in that it is unreasonable, burdensome, discriminative, class legislation, interferes with the freedom of contract, is a deprivation of property without due

process of law, and is in conflict with the Bill of Rights of the state Constitution. These questions have been considered and decided in this court in *Noble v. Ft. Smith Who. Gro. Co.,* 34 Okla. 662, 127 Pac. 14. It was there held that the act complained of was not violative of any of the provisions of either the state or federal Constitution, and that the same was clearly within the police powers of the state. It is therefore unnecessary to give further consideration to this assignment.

The fourth and last contention urged by plaintiff in error is:

"The law now in force regulating the sale of merchandise in bulk, if a valid law, does not apply to the garnishees in this case, and for that reason the court erred in admitting any evidence touching upon the 'Bulk Sales Law' in hearing the issues between plaintiff and garnishees."

This alleged error might present a serious question if the so-called "assignment" made by the Brown Hardware Company was, in fact, such a transfer as was contemplated by the exception to section 7910, Comp. Laws 1909, which reads:

"But nothing contained in this act shall apply to transfers made by executors, administrators, receivers, *assignees under a voluntary assignment for the benefit of the creditors,*" etc. (Italics ours.)

But the so-called assignment made in this case was not such a transfer as would exempt it from the operation of that provision of the statute. It was not intended to be such by the parties.

The term, "assignees under a voluntary assignment for the benefit of the creditors," as used in the proviso to section 7910; *supra,* has reference to and means the regular statutory assignment provided by law for failing debtors, while the word *"assignment"* in the sentence reading, "Transfers under this act shall include sales, exchanges, and *assignments,*" has reference and means:

"A transfer or setting over of property, or of some right or interest therein, from one person to another; the term denoting not only the act of transfer, but also the instrument effecting it." (*Noble v. Ft. Smith Who. Gro. Co., supra.*)

The transfer by the Brown Hardware Company, if intended to be covered by this last-quoted provision of statute, would therefore be prohibited, while if intended to be covered by the last clause of said section 7910, *supra,* would also be prohibited because such transfer was not *"the voluntary assignment for the benefit of creditors,"* as is provided by law.

Attention has been called to the case of *McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53, and it is insisted by counsel for plaintiff in error that the rule laid down in that case will be in conflict with this holding. This contention cannot be sustained, for, as above said, this is not an assignment (under the statute) for the benefit of creditors, within the meaning of that term; again there is such dissimilarity between the Washington Act (chapter 109, p. 222, Sess. Laws 1901) and our "Bulk Sales Law" as to destroy the value of *McAvoy v. Jennings* as an authority in the case at bar. In the case last named the assignment was by the court considered *valid* and as having been assented to by all the creditors. See *McAvoy v. Jennings,* 39 Wash. 109, 81 Pac. 77, where it was held that a creditor who assented to an assignment by the debtor, for the benefit of creditors, cannot be heard to say that it was fraudulent. That was the principal question in that case, and the court held that the assignment was good under the statute. Hence it follows that the case cited is of no value to us in the consideration of the question under discussion, for in the instant case the so-called assignment was not within the statute providing for transfers by assignment, and the defendant in error at no time recognized it as a valid voluntary assignment for the benefit of creditors.

Had the Coquillard Wagon Company, as was done in the case of *McAvoy v. Jennings,* waived the irregularities of the so-called assignment and treated the same as valid, a wholly different question would have been presented for our consideration, but it did not, but on the contrary specifically charged its invalidity on account of non-compliance with the statute regulating assignments for the benefit of creditors and as being

in direct contravention of the terms and provisions of the "Bulk Sales Act." Hence it necessarily follows that Humphrey, the so-called assignee, having taken the stock of goods, without authority of law, but contrary to the express provisions thereof, is not entitled to claim immunity in this case by virtue of section 248, Comp. Laws 1909, which provides that "an assignee for the benefit of creditors is not to be held liable for his acts done in good faith in the execution of the trust, merely for the reason that the assignment is afterwards declared void," for the simple reason that this transfer can in no wise be construed as an assignment such as was contemplated by said section. In this connection see, also, sections 243 and 244, Comp. Laws 1909. The trustee (Humphrey) gave no bond for the faithful performance of his duty; the deed of assignment was not recorded in the office of the register of deeds as required by law; no notice was given the defendant in error to present its claim, or to be present at the meeting of the creditors, in order to protect itself. Indeed, no attempt was made to bring the transaction within the provisions of the chapter of the statute defining and authorizing voluntary assignments for the benefit of creditors. To give sanction and approval to such conduct as this would be to throw wide open the doors to fraud and deceit, and would render nugatory and void the laws guaranteeing equal protection to creditors. To permit such a transaction to stand as against other creditors would in effect nullify the Bulk Sales Law, defeat the purpose of the Bankruptcy Act, and render extension of credit to retail dealers extremely perilous. Plaintiffs in error were evidently willing to try out the questions involved in this proceeding in the present suit without objection as to the form or style of action, and we are therefore precluded from a discussion of whether or not this was the proper mode of procedure in actions such as this. They do complain that the judgment is erroneous for that they are required to pay just the exact amount found to be due defendant in error from the Brown Hardware Company. There is no merit in this, although it would have been better prac-

tice had the trial court found specifically the exact amount of property or money defendants in error had in their possession belonging to the Brown Hardware Company at the time of the service of the garnishment process. But the evidence is overwhelming and not in any manner disputed that they had the entire amount of the estate, which on the figures given by Gannaway was worth more than $3,100. So long as the judgment in the case at bar does not exceed that amount, plaintiffs · in error have no cause to complain. When good business men, such as plaintiffs in error are, voluntarily · disregard the machinery provided by law for the handling of such problems as the one described by the record in this case, they ought not to be heard to complain if the rights belonging to· others, and which they have ignored, are restored to them in the usual and ordinary course of procedure by the courts.

From a careful survey of the whole case, we are constrained to say that substantial justice has been· done by the judgment in this case, and therefore the cause should be affirmed.

By the Court: It is so ordered.