John E. Traeger, Sheriff, for use of David Sachs, Appellee, v. National Surety Company and Mandel Weininger, Appellants.

### Gen. No. 24,180.

FRAUDULENT CONVEYANCES, § 15*—*what constitutes sale within Bulk Sales Act.* An assignment by a merchant of his merchandise, fixtures, etc., to one to sell and distribute the proceeds among his creditors is a sale within the meaning of the Bulk Sales Act [Callaghan's 1916 St. Supp. ¶ 10021(1) *et seq.*], and one to whom the assignee transfers such merchandise without complying with the act acquires no title as against a judgment creditor of the assignor.

Appeal from the Municipal Court of Chicago; the Hon. FRANK H. GRAHAM, Judge, presiding. Heard in this court at the March term, 1918. Affirmed. Opinion filed October 1, 1918. Rehearing denied October 14, 1918.

N. J. PRITZKER and MAXWELL R. HERMAN, for appellants; DOUGLAS C. GREGG, of counsel.

FRED H. ATWOOD, CHARLES O. LOUCKS and VERNON R. LOUCKS, for appellee; FRANK N. REED, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE McSURELY delivered the opinion of the court.

In this suit, upon a replevin bond, plaintiff had judgment for $385.10, which defendants ask to have reversed.

The facts seem to be that one Herman Breyer was the proprietor of a furnishing goods store in Chicago. Being in financial difficulties, on December 30, 1914, he executed a bill of sale to Jacob Katz and H. A. Pillman, two of his creditors, in and by which he "granted, sold, conveyed and assigned, and by these presents does grant, sell, convey and assign unto the said Jacob Katz and H. A. Pillman" all his property and assets, including stocks of merchandise, store and office fixtures, etc. The instrument further provided that Katz and Pillman should make a sale of the property and distribute the proceeds thereof among the creditors of Breyer, and that until the purpose of the agreement had been consummated Breyer was to retain his possession of the store at a salary. Subsequently the goods were sold under this agreement to Mandel Weininger, one of the defendants, for enough to pay twenty-five cents on the dollar to creditors of Breyer. After the creditors had been paid Weininger did not take over the goods or the business, but Breyer continued in possession of the store and goods, with his name on the signs and on the boxes which held goods. It is argued that all this was merely a ruse by which Breyer planned to dispose of his creditors at twenty-five cents on the dollar and then continue to operate the business with the goods which the creditors had furnished and delivered to him.

In March, 1915, David Sachs, the beneficial plaintiff, brought suit against Breyer and two others on a promissory note, and obtained judgment for $233.42. An execution was sued out and levied upon the stock of goods in the store of which Breyer had possession. While the bailiff was in possession of these goods un-

der his execution, Weininger sued out a writ of replevin in the Circuit Court, under which he took possession of the stock of goods. In the replevin suit the defendant National Surety Company was surety on Weininger's bond. Judgment by default was rendered against Weininger in the replevin suit, and a writ of *retorno habendo* was issued, but the goods were not returned. Thereupon this suit upon the bond followed, and upon trial on the merits there was judgment against the defendants.

Counsel for defendants claim that Weininger is protected because in the sale from Katz and Pillman to him the Bulk Sales Law in force in this State was complied with; and plaintiff replies that this cannot avail for the reason that the transfer from Breyer to Katz and Pillman was a transaction within the scope of the Bulk Sales Law and, concededly, that law was not complied with as regards that transaction.

The "Act to regulate the sale or transfer of goods," etc., in force July 1, 1913 (Hurd's Ill. St. 1915-16, p. 2331) [Callaghan's 1916 St. Supp. ¶ 10021(1) *et seq.*], provides that "the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business shall be fraudulent and void as against the creditors of the said vendor, unless" certain conditions are observed. This language is squarely applicable to the transfer to Katz and Pillman. The words of conveyance in the bill of sale are complete and purport to sell and convey in bulk all of the stock of merchandise, otherwise than in the ordinary course of trade. No reason is suggested, and none occurs to us, why the Bulk Sales Law does not cover a transaction of this kind. We are referred to no decision in this State precisely in point, but in other jurisdictions, when the matter has been consid-

ered, the provisions of the Bulk Sales Law have been held to be applicable.

In *Bailen v. E. P. Badger Import Co.*, 99 Neb. 24, after extended discussion and reference to decided cases, the court held that such a transfer for the benefit of creditors was within the requirements of the Bulk Sales Law. To the same effect are *Gallus v. Elmer*, 193 Mass. 106; *Sampson v. Brandon Grocery Co.*, 127 Ga. 454; *Humphrey v. Coquillard Wagon Works*, 37 Okla. 714; *Youghiogheny & Ohio Coal Co. v. Anderson*, 186 Mich. 349.

Following the reasoning in these cases we are of the opinion that the Bulk Sales Law was intended to prevent a dealer disposing of his stock of merchandise outside of the usual course of business so that it should be taken away from his creditors in general, and that the assignment to Katz and Pillman was a sale within the scope of the statute. It follows, therefore, that the transfer to Weininger was void as against Sachs, a creditor holding Breyer's note.

A suggestion is made of the allowance of an unreasonable amount for attorney's fees, but under the evidence adduced we are not prepared to say that the finding of the court was not justified.

We see no reason to disturb the judgment, and it is affirmed.

*Affirmed.*