## Cardiff Gypsum Plaster Company, Appellee, v. Hales Coal & Material Company, Defendant. R. H. Newitt et al., Garnishees, Appellants.

### Gen. No. 30,056.

1. ASSIGNMENTS FOR CREDITORS—*presumptive propriety of assignment.* The assignment by a debtor who is in financial difficulty and unable to pay his debts in full, of all his goods and chattels for the benefit of his creditors, should be looked upon by the courts with favor, because it tends to expedite payment of all the creditors without unnecessary litigation and expense.

2. FRAUDULENT CONVEYANCES—*assignments for benefit of creditors.* An assignment by an insolvent debtor of all his goods to a trustee for the benefit of creditors is not a "sale transfer or assignment" of his goods within the meaning of the Bulk Sales Act, Cahill's Stat., ch. 121a, the quoted words in such act meaning substantially the same thing, and the purpose of the act being to prevent fraudulent sales in bulk under the guise of other names.

Appeal by defendants from the Municipal Court of Chicago; the Hon. THEODORE F. EHLER, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Reversed. Opinion filed December 2, 1925.

Cardiff Gypsum Plaster Co. v. Hales C. & M. Co., 239 Ill. App. 16.

Knapp & Campbell, for appellants; John Howard Hershberger, of counsel.

Herbert A. Schryver, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

On August 28, 1924, plaintiff brought an action of assumpsit against the Hales Coal & Material Company, to recover on two promissory notes executed by the defendant and on the same day filed an affidavit for a writ of attachment in aid, the ground for attachment being that the defendant had, within two years last past, fraudulently conveyed or assigned its effects so as to hinder and delay its creditors. The writ was issued on the same day and served on the garnishee. The defendant filed an affidavit of merits in which it admitted the execution of the two promissory notes and there was no denial that they were still due and unpaid, but it was further set up that the defendant was in financial difficulties and a number of its creditors had formed a creditors' committee to take over defendants' assets for the benefit of defendants' creditors and that this had been agreed upon by the defendants and thereupon it had made an assignment to a committee of defendants' creditors for the benefit of all of its creditors; that plaintiff was notified by the chairman of the creditors' committee of the assignment and afterwards the creditors' committee had sold the property to Henry Crown, one of the garnishees, and that the proceeds of the sale were in the hands of the creditors' committee. It was further set up that the sale was made in good faith. The garnishees answered to the effect that the defendant being insolvent, made an assignment of all its assets for the benefit of all its creditors and that the assignee afterwards sold the property; that all of the creditors were notified that certain dividends were paid by the

assignee to all of the creditors, including plaintiff, but the latter refused to accept the amount sent him. The answer further set up that the assignment and sale of the goods were made in good faith for the sole purpose of conserving the assets for the interest of all the creditors. The case was tried before the court without a jury. The attachment was sustained and the court found that there was $1,069.06 due and owing from the defendant to the plaintiff, and further found that the garnishee owed the same amount to the defendant. Judgment was entered on the finding and the garnishees prosecute this appeal.

The facts were stipulated from which it appears that the provisions of the Bulk Sales Law, chapter 121a, Cahill's St., were not complied with, either at the time the defendant transferred the goods to the creditors' committee or at the time the creditors' committee sold them to the garnishee, Crown. It further appears from the stipulation that plaintiff did not attend any meeting of the creditors and while he received a number of letters from the creditors' committee, explaining the matter, plaintiff at no time consented to the transfer of defendants' assets to the committee or to the garnishee, Crown, but, on the contrary, throughout the proceedings insisted that his claim be paid in full. The learned trial judge followed a number of opinions rendered by this court, holding that the act did apply to such an assignment or transfer. And since, in the instant case, it was conceded that the provisions of that act had not been complied with, the transfer and assignment were held to be void as against plaintiff who was one of defendants' creditors. The question for decision is whether the Bulk Sales Act applies to the assignment or transfer by a debtor of his goods and chattels to a trustee for the benefit of his creditors.

The Bulk Sales Act was enacted in 1913 and by section 1 it is provided: "That the sale, transfer or

assignment in bulk of the major part of the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business shall be fraudulent and void as against the creditors of said vendor, unless the said vendee shall, in good faith, at least five (5) days before the consummation of such sale, transfer, or assignment demand and receive from the vendor a written statement under oath of the vendor * * *, containing a full, accurate and complete list of the creditors of the vendor, their addresses and amounts owing to each as near as may be ascertained * * *; and unless the said vendee shall at least five days before taking possession of said goods and chattels and at least five days before the payment or delivery of the purchase price, * * * in good faith, deliver or cause to be delivered or send or cause to be sent personally or by registered letter properly stamped, directed and addressed, a notice in writing to each of the creditors of the vendor named in the said statement, or of whom the said vendee shall have knowledge, of the proposed purchase by him of the said goods and chattels and of the price, terms and conditions of such sale.'' Section 2 of the Act provides: ''Any vendor of all or the major portion of a stock of merchandise or merchandise and fixtures or other goods and chattels of the vendor's business, in bulk, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business or any person for or on behalf of such vendor who shall knowingly or wilfully make or deliver or cause to be made or delivered any false statement or any statement which in any material portion is false or shall knowingly or wilfully fail to include the names of all the creditors of said vendor in said statement, as provided for in section 1, of this Act, shall be * * * punished.''

20    APPELLATE COURTS OF ILLINOIS.

Cardiff Gypsum Plaster Co. v. Hales C. & M. Co., 239 Ill. App. 16.

Section 3 provides: "Vendors and vendees under this Act shall include corporations, associations, copartnerships and individuals," etc., and further that the act does not apply to sales by executors, administrators, receivers, trustees in bankruptcy or by any public officer under judicial process.

The purpose of the statute was to prevent the sale of a stock of goods in bulk by a debtor (unless in the ordinary course of trade) without first giving his creditors notice and an opportunity to protect themselves. *Talty v. Schoenholz*, 224 Ill. App. 158. In that case the court said (p. 163): "The purpose of this statute was to prevent sales of stocks of goods in bulk without first giving the creditors of the vendor an opportunity to protect themselves against the sale." The assignment by a debtor, who is in financial difficulty and unable to pay his debts in full, of all his goods and chattels for the benefit of his creditors, should be looked upon with favor because it tends to expedite payment of all the creditors without unnecessary litigation and expense. Such assignments have been looked upon with favor from an early time.

In the case of *Pickstock v. Lyster*, 3 Maule & Selwyn 371, it was said by Lord Ellenborough that an assignment for the benefit of creditors was, "An act of duty rather than of fraud, when no purpose of fraud is proved. The act arises out of a discharge of the moral duties attached to his character of debtor, to make the fund available for the whole body of creditors. Here if the assignment had been for the purpose of fraud upon the plaintiff, the plaintiff would have been entirely excluded from it, whereas it appears that his name was once proposed and inserted as trustee." And in the same case Bayley, J., concurring said: "It seems to me that this conveyance, so far from being fraudulent, was the most honest act the party could do. He felt that he had not sufficient to satisfy all his debts and he proposed to distribute his prop-

erty in liquidation of them; this was not acceded to for the plaintiff endeavored by legal process to obtain his whole debt, the obtaining of which would have swept away the property from the rest of the creditors."

In the instant case the debtor's goods and chattels were assigned by it for the benefit of all the creditors, including plaintiff. "It was the most honest act" that the defendant could do. It could not pay its debts in full and, therefore, it proceeded to distribute its property equitably among all of its creditors, including plaintiff. Plaintiff was not satisfied but wants to obtain payment in full to the detriment of the other creditors. So that under the facts and the law the assignment by the defendant of his goods and chattels for the benefit of his creditors ought to be sustained, unless to do so would violate provisions of the Bulk Sales Act.

It will be noted that the act makes the "sale, transfer or assignment" of a debtor's goods in bulk otherwise than in the ordinary course of business void as against the creditors, unless notice is given to all the creditors. We think the words, "sale, transfer or assignment" as used in the act all mean substantially the same thing. That is, they were different terms used for the purpose of preventing fraudulent sales in bulk under the guise of other names. The statute does not in terms refer to an assignment by a debtor for the benefit of his creditors and we think such assignment, keeping in mind that the purpose of the act was to prevent fraudulent sales, is not within the purview of the act. But counsel for the plaintiff says that this question has been decided to the contrary in a number of cases by this court, our Supreme Court and courts of other jurisdictions, and in support of this counsel cites the cases of *National Trust & Credit Co. v. Kiningham,* 201 Ill. App. 78; *Farmers State Bank v. Blanchard,* 206 Ill. App. 323; *Danville Auburn Auto*

*Co. v. National Trust & Credit Co.,* 212 Ill. App. 116; *Traeger v. National Surety Co.,* 212 Ill. App. 267; *United Paper & Trading Co. v. Allen,* 222 Ill. App. 261; *Resler v. Seaman,* 233 Ill. App. 305; *Carney v. Rubin,* 236 Ill. App. 622; *Pogue v. Rowe,* 236 Ill. 157; *Johnson Co. v. Beloosky,* 263 Ill. 363; *Bailen v. E. P. Badger Import Co.,* 99 Neb. 24; *Gallus v. Elmer,* 193 Mass. 106; *Sampson v. Brandon Grocery Co.,* 127 Ga. 454; *Humphrey v. Coquillard Wagon Works,* 37 Okla. 714; and *Youghiogheny & Ohio Coal Co. v. Anderson,* 186 Mich. 349.

The *Kiningham* case which was decided by the Appellate Court of the Third District, was an action of assumpsit, based on promissory notes. The defendant filed a plea setting up that after making the notes he was unable to pay his debts; that he entered into an agreement, whereby he was to convey his property, real and personal, for the benefit of his creditors to Kiningham and that plaintiff was to release him from the debt. The evidence showed that at a meeting of the defendant's creditors, it appeared that the defendant was unable to pay all his debts and a committee was appointed with a view of having defendant make an assignment for the benefit of his creditors, whereby he could be released from his debts without going through bankruptcy. Such assignment was made to Kiningham as trustee. This was not consented to by plaintiff and another creditor. The court said (inter alia) that the assignment did not purport to be in conformity with the provisions of the Bulk Sales Law and that "the assignment not being for the benefit of all the creditors, but only such as might accede thereto, and made without any pretense of compliance with the statute is void (*Pogue v. Rowe,* 236 Ill. 157) and is not a defense to the notes." It will be noted from the quotation just made that the assignment for the benefit of creditors in that case was held not to be a good defense, because it was not made for the bene-

fit of all the creditors, but only for those who acceded to it. And the court further held that it was void, no attempt having been made to comply with the provisions of the Bulk Sales Law and cited, in support of this, the *Pogue* case. In the *Pogue* case an insolvent debtor transferred his stock of merchandise to Pogue for the benefit of his creditors. One of the creditors obtained judgment against the debtor. An execution was levied on the property in Pogue's possession. Pogue sued out a writ of replevin and regained possession of the goods. He was defeated in the justice court and an appeal was taken to the county court, where he was again defeated and a writ of error was issued out from the Supreme Court. The court said (p. 158): ''When the property was transferred to Pogue there was no attempt to comply with the 'Bulk Sales Act' (Laws of 1905, p. 284). The court held the transfer to Pogue to be void on account of this noncompliance. This view is erroneous. That act is unconstitutional. We have so held since this case was tried in the county court. *Off & Co. v. Morehead*, 235 Ill. 40.'' The court there further held the statute of this State in reference to voluntary assignments for the benefit of creditors was suspended by the National Bankruptcy Act of 1898, but that a creditor might still make a common-law assignment for the benefit of his creditors. It is clear that the Supreme Court in the *Pogue* case in no way held by implication or otherwise that the Bulk Sales Law applied to assignments made by a debtor for the benefit of his creditors. It simply said that the Bulk Sales Act of 1905 had theretofore been held unconstitutional.

In the case of the *Farmers State Bank,* which was decided by the Appellate Court of the Fourth District, the case is not published in full, but we have been furnished by counsel with a copy of the opinion from which it appears that Norton Bros. who were engaged in the general merchandise business were financially

24  APPELLATE COURTS OF ILLINOIS.

Cardiff Gypsum Plaster Co. v. Hales C. & M. Co., 239 Ill. App. 16.

embarrassed and made an assignment of its goods for the benefit of its creditors. No attempt was made to comply with the provisions of the Bulk Sales Law. The trustees for the creditors sold the assets to Blanchard. Plaintiff having obtained a judgment against Norton Bros. levied on the property in the possession of Blanchard. It was there held that the sale was void as to nonconsenting creditors. The court further held that the assignment did not comply with the statute of this State concerning assignments for the benefit of creditors. The fact that the statute concerning assignments was held by the Supreme Court in the *Pogue* case to have been suspended was not called to the court's attention. No authorities are cited in the opinion on the question of the application of the Bulk Sales Act. Nor does it appear that there was any contention there made that that Act did not apply.

The *Kiningham* case, *supra* (201 Ill. App. 78) was again before the court in 212 Ill. App. 116, and the court there followed the rule announced in the first appeal, which had held the sale of the goods in question void, because of failure to comply with the provisions of the Bulk Sales Act. There was no discussion of this question, but only a reference to the former opinion.

In the *Traeger* case, which was decided by the First Division of the Appellate Court of the First District, it was held that an assignment for the benefit of creditors came within the provisions of the Bulk Sales Act. That case was a suit upon a replevin bond and from the evidence it appeared that Herman Breyer, the proprietor of a furnishing goods store in Chicago, was in financial difficulties and executed a bill of sale to two of his creditors—Katz and Pillman—for the benefit of all of his creditors, whereby he conveyed and assigned his stock of merchandise. The merchandise was to be sold and the proceeds distributed among the creditors. The assignees sold the goods to one

Weininger.   After the assignment, suit was brought against Breyer by a creditor.   Judgment was obtained and execution issued and a levy made on the goods in the store.   Weininger brought replevin and took the goods under the writ.   He was defaulted in the action and a writ of *retorno habendo* was issued.   The goods were not returned, and suit was brought on the bond.   The court quotes from section 1 of the Bulk Sales Act [Cahill's St. ch. 121a, ¶ 1] and then said (p. 269):

"This language is squarely applicable to the transfer to Katz and Pillman.   The words of conveyance in the bill of sale are complete and purport to sell and convey in bulk all of the stock of merchandise, otherwise than in the ordinary course of trade.   No reason is suggested, and none occurs to us, why the Bulk Sales Law does not cover a transaction of this kind.   We are referred to no decision in this State precisely in point, but in other jurisdictions, when the matter has been considered, the provisions of the Bulk Sales Law have been held to be applicable.

"In *Bailen v. E. P. Badger Import Co.*, 99 Neb. 24, after extended discussion and reference to decided cases, the court held that such a transfer for the benefit of creditors was within the requirements of the Bulk Sales Law.   To the same effect are *Gallus v. Elmer*, 193 Mass. 106; *Sampson v. Brandon Grocery Co.*, 127 Ga. 454; *Humphrey v. Coquillard Wagon Works*, 37 Okla. 714; *Youghiogheny & Ohio Coal Co. v. Anderson*, 186 Mich. 349.

"Following the reasoning in these cases we are of the opinion that the Bulk Sales Law was intended to prevent a dealer disposing of his stock of merchandise outside of the usual course of business, so that it should be taken away from his creditors in general and that the assignment to Katz and Pillman was a sale within the scope of the statute."

We think the court in that case was misled by the authorities it cited in support of the conclusion there reached.   An examination of the cases there referred

26    APPELLATE COURTS OF ILLINOIS.

Cardiff Gypsum Plaster Co. v. Hales C. & M. Co., 239 Ill. App. 16.

to discloses that the Supreme Court of Nebraska was composed of seven justices. The opinion in that case was written by Letton, J. (two of his associates concurring), in which it was said that a sale or transfer by a debtor to a trustee for the benefit of his creditors, to be valid, required compliance with the Bulk Sales Law of that State. There was an opinion by Hamer, J., concurring in the affirmance of the judgment in which he said (p. 33) : ''I do not think the Bulk Sales Law is in any way applicable to this case.'' There were two dissenting opinions, one by Sedgwick, J., and one by Fawcett, J., Barnes, J., concurring in the opinion written by the latter, which opinions were to the effect that the Bulk Sales Law was not applicable. In the opinion written by Judge Letton he cites the cases of *Gallus v. Elmer,* 193 Mass. 106; *Sampson v. Brandon Grocery Co.,* 127 Ga. 454; *Humphrey v. Coquillard Wagon Works,* 37 Okla. 714; *Youghiogheny & Ohio Coal Co. v. Anderson,* 186 Mich. 349, which will be hereafter referred to. It, therefore, appears that a majority of the judges of the Supreme Court of Nebraska did not hold that the Bulk Sales Law of that State applied where a debtor made an assignment for the benefit of his creditors. On the contrary, it appears that four of the seven judges held that it did not apply.

We will now consider the other cases referred to in the *Traeger* opinion.

In the *Gallus* case (193 Mass. 106) a dealer transferred the whole of his stock of merchandise, not in the usual course of business, to one of his creditors in satisfaction of a pre-existing debt. It was held that this was a sale in bulk within the meaning of the Bulk Sales Act of that State and void against creditors, the act having not been complied with. There the transfer of the stock of goods was not made for the benefit of creditors, but was a transfer to one of his creditors for such creditor's use and benefit only. This sort of

sale was the kind declared void unless there was a compliance with the Bulk Sales Act.  It is obvious that this case has no application where the transfer is made for the benefit of all the creditors.

The *Sampson* case (127 Ga. 454) is also not in point. It did not involve an assignment for the benefit of creditors.  In that case there was a sale of goods by a debtor to his creditor in an extinguishment of the creditor's debt.

In the *Humphrey* case (37 Okla. 714) it appeared that a hardware company was operating a retail store in Oklahoma.  It became insolvent and made an agreement with all of its creditors, except one, whereby a stock of hardware, etc., was transferred to one Humphrey for the benefit of his creditors.  The trustee afterwards sold the stock of goods and distributed the proceeds to all of the creditors but one, which creditor was unknown to the trustee.  This creditor afterwards brought suit against the hardware company and Humphrey was served as garnishee.  The court held, among other things, that the assignment for the benefit of creditors was void because it failed to comply with the statute of Oklahoma.  And in passing upon the applicability of the Bulk Sales Law of that State, the court held that by the express provisions of the Bulk Sales Act of that State, assignments for the benefit of creditors were specifically excepted. The court there quoted from the statute as follows: "But nothing contained in this act shall apply to transfers made by executors, administrators, receivers, assignees under a voluntary assignment for the benefit of creditors."

In the *Anderson* case (186 Mich. 349) the court said (p. 353): "It is therefore unnecessary to decide whether the Sales in Bulk Act applies to and governs a valid assignment for the benefit of creditors."  So that it is clear that none of the cases cited in the *Traeger* case is authority for the proposition that the

provisions of the Bulk Sales Law must be complied with where the goods are transferred for the benefit of creditors.

The Second Division of the Appellate Court, First District, in the *Allen* case, *supra* (222 Ill. App. 261), held that the assignment there made by a debtor was not for the benefit of all its creditors, but only for those creditors who consented to its terms. The court followed the *Traeger* case, to the effect that an assignment for the benefit of creditors came within the Bulk Sales Act. There was no discussion of the authorities other than the *Traeger* case.

In the *Resler* case (233 Ill. App. 305) this division of the Appellate Court of the First District followed the *Traeger* case, holding that an assignment for the benefit of creditors came within the provisions of the Bulk Sales Act. And in the *Carney* case, *supra,* we merely refer to the *Resler* case as an authority for holding that the Bulk Sales Law applied to an assignment for the benefit of creditors.

In the *Johnson Co.* case, *supra* (263 Ill. 363), there was a sale of an entire stock in trade without complying with the Bulk Sales Act of 1913. The court said that the sole question was the constitutionality of that act and it was held to be valid. The question now under consideration was in no way involved.

The question under consideration, so far as we are advised, has never been passed upon by our Supreme Court and consideration of the cases as decided by the several Appellate courts of this State, which we have analyzed above, discloses the fact that they were, in our opinion, misled by the authorities cited from other jurisdictions for the reasons above stated. We are of the opinion that the Bulk Sales Law is not applicable where the stock of goods is transferred for the benefit of all the creditors, and the conclusion we have reached is sustained by the following authorities: *McAvoy v. Jennings,* 44 Wash. 79; *Kasper v. Spokane Merchants'*

*Ass'n,* 87 Wash. 447; *Stovall Co. v. Shepherd Co.,* 10 Ga. App. 498; *Turner v. Drees Hardware & Furniture Co.,* 207 Mo. App. 567, 227 S. W. 1085; *Eldredge Brewing Co. v. Cocheco Bottling Co.,* 79 N. H. 41; *Blanke Tea & Coffee Co. v. Sargent,* 57 Colo. 299.

In the *McAvoy* case an assignment of a stock of groceries was made for the benefit of creditors. In holding that such sale did not come within the Bulk Sales Law of that State, the court said (p. 86): "The contention that the transfer was void by reason of its being in contravention of what is termed the sales-in-bulk law is untenable, for the reason that this was not a sale within the contemplation of that act. The object of that law was to prevent the vendor, generally a retail merchant, from escaping his responsibilities to his creditors by disposing of all his stock, pocketing the proceeds, and leaving his creditors without redress. But in this case Jennings did not purchase the stock, and under the terms of the agreement was not to pay any portion of the value of the stock, of which he took possession, to the owners. But he simply acted as a trustee so far as the goods assigned to him went, for the benefit of the creditors." And again the Supreme Court of Washington (87 Wash. 447) held that an assignment for the benefit of creditors was not within the provisions of the Bulk Sales Law of that State; that an assignment for the benefit of creditors was not a purchase of the stock of goods in bulk within the meaning of that act.

To the same effect was the holding of the Appellate Court of Georgia in the *Stovall* case, where it was said that the purpose of the act was to protect creditors against fraudulent sales. The court there said: "When merchants sell their entire stock of goods to one person, without notice of any kind to their creditors, a fraud is frequently perpetrated upon the creditors; and it was the intention of the Legislature to afford a remedy to the victims of these fraudulent

sales. The evil sought to be remedied was the prevention of sales by debtors of their stock in bulk, thus depriving creditors of assets or property out of which to make their claims. The statute is aimed at the fraudulent conduct of the debtor as a vendor. It has no application whatever to an honest bona fide arrangement on the part of the creditors with the debtor to protect themselves by agreeing to a composition of their debts, or to an honest assignment on the part of the debtor for benefit of his creditors.''

The same rule was announced in the *Turner* case by the Appellate Court of Missouri where a great many of the authorities including the *Traeger* case, *supra,* were discussed.

Since we hold that the Bulk Sales Act does not apply to an assignment for the benefit of creditors, it follows the judgment of the municipal court of Chicago must be reversed.

*Judgment reversed.*

THOMSON, P. J., and TAYLOR, J., concur.