**FIRST NAT. BANK OF FREDERICK v. LAMB et al.**

No. 17773.   Opinion Filed March 20, 1928.

Rehearing Denied May 22, 1928.

(Syllabus.)

1. **Fraudulent Conveyances—Violation of Bulk Sales Law—Garnishment of Transferee by Creditor—Necessary Showing.**

To maintain an action against a garnishee under the provisions of article 2, ch. 37, C. O. S. 1921, known as the "Bulk Sales Law," it must be shown that such garnishee became the transferee of some portion of a stock of goods, wares, and merchandise belonging to the principal debtor otherwise than in the ordinary course of business, or the entire stock in bulk, and without demanding and receiving from the transferer the list of creditors and giving the notice as provided in said act.

2. **Same—Garnishee Held not Transferee.**

Evidence examined, and held, insufficient to show that garnishee became such transferee.

Commissioners' Opinion, Division No. 2.

Error from District Court, Tillman County; Frank Mathews, Judge.

Action by Roy Lamb and J. L. Parrott against E. W. Conley and First National Bank of Frederick, Okla., garnishee. The two cases were consolidated. Judgment for plaintiffs, and the bank appeals. Reversed.

Mounts & Chamberlin and J. T. Johnson, for plaintiff in error.

Cargill & Whiteside and Whiteside & Snodgrass, for defendants in error.

DIFFENDAFFER, C. On the 18th day of April, 1922, Roy Lamb and J. L. Parrott, two of the defendants in error, instituted separate actions in the district court of Tillman county against E. W. Conley, who had theretofore, and up until about the 8th day of March, 1922, been engaged in business as a retail dealer in automobiles, Fordson tractors, automobile accessories and parts, and also conducting a repair business. The actions were brought to recover money judg-

ments, that of Parrott being for labor, and that of Lamb being for labor and also for money loaned.

On the same date, and in said actions, each of the plaintiffs filed an affidavit in garnishment against the First National Bank of Tipton, Okla. On December 5, 1922, judgment was rendered in each of said actions against Conley for the respective amounts sued for.

The garnishment proceedings against the First National Bank of Tipton were continued from time to time until May 30, 1923, at which time the garnishment proceedings were quashed.

On December 20, 1923, after executions had been returned unsatisfied, new affidavits in garnishment were filed against said First National Bank of Tipton. The bank thereafter answered, denying that it was indebted to or had property in its possession or under its control belonging to said principal defendant, E. W. Conley. Issues were joined on these answers, and on October 15, 1924, by agreement, the causes were consolidated and trial of the issues had before the court, resulting in a finding and judgment for the garnishee.

Upon the trial it developed that plaintiffs were seeking to hold the garnishee, First National Bank of Tipton, liable because it was claimed that the garnishee bank had theretofore, on or about the 8th day of March, 1922, taken charge of and sold to one U. P. Busche all the stock in trade and merchandise and business of Conley, without complying with the provisions of section 6027, C. O. S. 1921, known as the "Bulk Sales Law." It appears that plaintiffs were relying on a certain bill of sale purporting to convey said proprety and business from the First National Bank of Tipton to Busche. All the stock in trade, as well as the fixtures, etc., of the business had been transferred to Busche, and he had taken possession thereof sometime about the 8th day of March, 1922.

One Bob Farrington, who, it appears, was the managing officer of the First National Bank of Tipton, had executed a bill of sale in the name of that bank to Busche. It was apparently on account of this bill of sale that plaintiffs were seeking to hold that bank under the provisions of the Bulk Sales Law, it appearing that no notice to creditors had been given. It developed, however, that Farrington was not acting for the First National Bank of Tipton in the matter, but was looking after the interests of and representing the First National Bank of Frederick. It developed at that hearing that, on July 7,

1921, Conley had executed a chattel mortgage on the property to the Farmers State Bank of Tipton, to secure a note of that date in the sum of $5,000, which mortgage was filed for record on July 8, 1921; that thereafter, Conley, being indebted to the First National Bank of Frederick, on November 12, 1921, executed a chattel mortgage on the property to that bank; that on or about the 11th day of February, 1922, the First National Bank of Frederick bought the note and took an assignment thereof, without recourse, from the Farmers State Bank, thereby becoming the owner and holder of both notes and chattel mortgages; and thereafter the property was sold and transferred to Busche, and the proceeds paid to the First National Bank of Frederick, upon its notes.

Immediately after the hearing in the garnishment proceedings against the First National Bank of Tipton, plaintiffs filed affidavits in garnishment against the First National Bank of Frederick, in which, after reciting the indebtedness of Conley to plaintiffs, each affidavit alleged:

"And that the First National Bank, of Frederick, Okla., on or about the 1st day of March, 1922, acting by and through one Bob Farrington, who was at said time the president or managing officer of the First National Bank of Tipton, Okla., took possession of said retail mercantile business and disposed of the same, without complying with the Bulk Sales Law of the state of Oklahoma.

"Affiant further states that, on the 18th day of April, 1922, this plaintiff instituted action against E. W. Conley and garnishment proceedings against the First National Bank of Tipton, and that the First National Bank of Tipton, and the defendant E. W. Conley filed various and sundry motions and demurrers, and that plaintiff was unable to obtain a trial of the issues between the plaintiff and the garnishee, the First National Bank of Tipton, until October 15, 1924.

"Affiant further states that upon the trial of the issue raised between the plaintiff and the First National Bank of Tipton, plaintiff for the first time discovered a fraudulent conveyance was made by E. W. Conley to the First National Bank of Frederick, and not to the First National Bank of Tipton. * * *

"Affiant further states that by virtue of the manner in which the First National Bank of Frederick, Okla., became the transferee of said mercantile business, that plaintiff was unable to ascertain said facts, and did not ascertain said facts until the trial of said garnishment action against the First National Bank of Tipton, Okla., on the 15th day of October, 1924."

The bank thereafter filed its answers in

which it denied that it was at the time of the service of garnishment summons, or had since become, in any manner or upon any account, indebted to Conley, or that it had in its possession or under its control any property or credits of any kind or description belonging to said principal defendant, and denied generally all the allegations in the affidavits in garnishment, and further pleaded the statute of limitations.

Plaintiffs served notice that they elected to take issue on the answers, and thereafter the garnishment proceedings, as against this bank, were by agreement consolidated, and the issues were tried to the court without a jury, resulting in findings generally and judgment in favor of plaintiffs, from which this appeal is brought.

The petition in error contains 16 assignments of error, but we think that in this case, we need consider only the third and fourth assignments, viz., that the verdict and judgment is not sustained by sufficient evidence, and that the verdict and judgment is contrary to law.

That the position taken by plaintiffs at the trial may be understood, we quote from the opening statement of plaintiff's counsel:

"But I desire to state it is our contention that the mortgage which he refers to as having been given to the Farmers State Bank of Tipton, being upon a stock of merchandise, was void as to all creditors and purchasers, and that no transfer of the property actually took place until the day that the First National Bank of Frederick, through its agent, the president or vice president of the First National Bank of Tipton, went into the place of E. W. Conley and took an invoice and turned the business over to U. P. Busche, who thereafter became the owner and operator of the mercantile business formerly owned by E. W. Conley."

It will thus be seen that plaintiffs below were not seeking to hold the bank for, or on account of, either of the mortgages given by Conley, but upon an alleged transfer which they claimed took place on the day the First National Bank of Frederick, through its agent, went into the place of E. W. Conley and took an invoice and turned the business over to U. P. Busche, who thereafter became the owner and operator of the business formerly owned by E. W. Conley.

In will, therefore, be necessary to review the evidence in order to ascertain whether there is any evidence upon which to base a finding that the First National Bank, at the time alleged, ever became a transferee of any portion of the stock of goods, wares and merchandise of Conley, within the meaning of article 2, ch. 37, C. O. S. 1921, commonly known as the "Bulk Sales Law." By section 6029, C. O. S. 1921, transfers under the act are made to include transfers in payment of debt, in whole or in part, mortgages, sales, exchange and assignment, not including administrators, receivers, assignees under voluntary assignment for the benefit of creditors, trustees in bankruptcy, or sales under judicial process.

A transfer is defined in 38 Cyc. p. 939 as:

"The act by which the owner of a thing delivers it to another person with the intent of passing the rights he had in it to the latter; any act by which the owner of anything delivers or conveys it to another with the intent to pass his rights therein; the bearing over of a right or title or property in a thing, from one to another; the handing over or parting with property with intent to pass it, or certain rights in it, to another who becomes the transferee. * * *"

And in Re Peabody (Cal.) 97 Pac. 184, it is said:

"In ordinary language it has a very general meaning, applying either to the removal of a thing or rights from one place or person to another, the changing of control or possession of things or to the conveyance of title."

We have carefully examined the evidence, and do not find anything therein that tends to prove that Conley ever turned the business over or delivered the possession of the property to the First National Bank, or any one acting for it. Roy Lamb, one of the plaintiffs, testified that he had worked for Conley a number of years; that he worked for him in the business down to the time Busche took possession; that he was working for Conley when the invoice was taken; that Conley was present and assisted in taking the invoice; that he knew Conley had automobiles, parts and accessories for sale to the value of about $4,000. J. L. Parrott, the other plaintiff, also testified that he had worked for Conley a number of years; that he was present and assisted in taking the invoice; that Conley got him to help take the invoice; that he understood, at the time, it was being taken in order to make a sale; that Conley was present during all that time and assisting in taking the invoice; that he knew immediately after the invoice was taken that Busche had bought the property and business, and that he continued to work in the business for Busche; that he supposed that he understood that Conley was selling to Busche; that he understood that Conley had sold in March, 1922; that Conley owned it up to the time

the invoice was taken, though he, in answer to a leading question by his own counsel, testified that he did not know about Conley ever having sold it.

Busche, a witness for plaintiff, insisted that he had bought the property from the First National Bank of Tipton, but upon cross-examination stated that Conley was in possession of the property up until the date the invoice was taken, and stayed there until the bill of sale was executed and he took the property over.

It is true that Farrington acting for defendant bank gave Busche a bill of sale to the property, and it appears the bill of sale was made in the name of the First National Bank of Tipton. The bill of sale was not introduced in evidence, nor was it explained why the bill of sale was executed in the name of the First National Bank of Tipton; but no witness testified that the First National Bank of Frederick was ever the owner or in possession of the property, or that that bank or any of its officers or agents represented or stated that the First National Bank of Frederick, or the First National Bank of Tipton, owned the property.

Counsel for defendants in error cites Humphrey v. Coquillard Wagon Works, 37 Okla. 714, 132 Pac. 899, as authority in support of the judgment in this case, says he cannot imagine a case more nearly in point. We have examined that case, and find that the facts in that case are entirely different from those in the instant case. There the creditor, Brown Hardware Company, transferred the entire stock to Humphrey as assignee, or trustee, though not in compliance with the law relative to assignment for benefit of creditors. Humphrey took possession of the stock, and in about ten days sold same to Gannaway. There was no question in that case as to the stock of goods being trans-

ferred to Humphrey, or as to his having sold same. Both transactions were in violation of the Bulk Sales Law; both Gannaway and Humphrey were held liable. Here, as pointed out, there is no evidence that Conley ever transferred the stock to the First National Bank, or that the bank had possession thereof, but, on the contrary, the evidence is conclusive that Conley remained in possession up to the time it was turned over to Busche. As pointed out, plaintiff's counsel, at the trial, contended that there had never been any transfer of the property until the day the invoice was taken and the business turned over to Busche, who thereafter became the owner. His contention was that the First National Bank of Frederick, and not Conley, had turned it over to Busche.

Counsel for plaintiff in his brief, in explanation of why plaintiff did not pursue their remedy against Busche, or attach the property says: "There is no evidence as to when Conley turned the business over to the bank or Farrington." We fail to find in the evidence that he ever did so.

There being no evidence that the bank became a transferee of the property in payment of a debt, in whole or in part, or as a pledgee, or as a purchaser or assignee, it follows that the bank could not be held liable to plaintiff under the Bulk Sales Law.

For the reason pointed out, the judgments should be reversed, with directions to enter judgment in each case for the garnishee, the First National Bank of Frederick.

BENNETT, HERR, JEFFREY, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 27 C. J. p. 878. §888; p. 884, §891; anno. 39 L. R. A. (N. S.) 376; 12 R. C. L. pp. 529, 530. (2.) 27 C. J. p. 892, §907.