2009 OK 61

**STATE of Oklahoma ex rel., PROTECTIVE HEALTH SERVICES STATE DEPARTMENT OF HEALTH, Complainant,**

v.

**Bernadine VAUGHN, Nurse Aide, Certification No. 372381800990E, Respondent.**

No. 104,704.

Supreme Court of Oklahoma.

Sept. 15, 2009.

As Corrected on Rehearing Nov. 16, 2009.

Mark Hammons, Tamara Gowens, Hammons, Gowens & Associates, P.C., Oklahoma City, OK, for appellant.

Tom L. Cross, Deputy General Counsel, Oklahoma State Department of Health, Oklahoma City, OK, for appellee.

TAYLOR, V.C.J.

¶ 1 The first impression issue in this case is whether a certified nurse aide's photocopying a resident's medication record and releasing it to the Equal Employment Opportunity Commission (EEOC) requires the Oklahoma State Health Department (the Department) to make a finding of misappropriation of a resident's property and place the finding on the Oklahoma Nurse Aide Registry pursuant to title 42, sections 1396r(e)(2) and 1396r(g)(1)(C) of the United States Code; title 42, sections 483.13, 483.156, and 488.301 of the Code of Federal Regulations (CFR); title 63, section 1–1951 of the Oklahoma Statutes; and sections 310:677–1–2, 310:677–7–4, and 310:677–7–4 of the Oklahoma Administrative Code (OAC).

## I. FACTS

¶ 2 The relevant facts at all stages of the proceedings, including appellate review, are undisputed. While employed by the Epworth Villa (Epworth) nursing home as a certified nursing assistant, Bernadine Vaughn filed a complaint with the EEOC, alleging racial discrimination. Thereafter and while still working at Epworth, Ms. Vaughn saw a patient's medication record on a copier. Ms. Vaughn believed that the medication record showed that Caucasian nurses had made errors for which they were not disciplined, although Ms. Vaughn had been disciplined for similar errors. Ms. Vaughn photocopied two pages of the medication record[1] and gave them directly to the EEOC to support her claim of racial discrimination. Ms. Vaughn did not take the original record off Epworth's premises. Epworth's personnel policies defined the records as Epworth's property. There was no evidence that the patient or the patient's family knew about the incident, let alone suffered any harm.[2]

¶ 3 During the EEOC proceeding,[3] Epworth discovered that Ms. Vaughn had given

---

1. Ms. Vaughn's "motion for summary judgment" before the administrative law judge states, as an undisputed fact, that she copied four pages of the medication record. It is irrelevant to the resolution of the issue presented here whether she copied two or four pages.

2. The evidence indicates that Ms. Vaughn photocopied the medication record in June of 2004 and that the patient died in August of 2004. The evidence does not show when Ms. Vaughn gave a photocopy of the medication records to the EEOC.

3. Ms. Vaughn also brought suit in federal district court against Epworth on several charges, all related to its alleged discriminatory practices and wrongful discharge. *Vaughn v. Epworth Villa*, 2006 WL 2987728 (W.D.Okla.2006). On August 4, 2006, the court denied Ms. Vaughn's motion for partial summary judgment. *Vaughn v. Epworth Villa*, 2006 WL 2246453 (W.D.Okla. 2006). On October 17, 2006, the court granted Epworth's partial summary judgment, leaving Ms. Vaughn's discriminatory treatment race claims pending. *Id.* at *5. The order granting partial summary judgment was affirmed on ap-

the photocopies to the EEOC and terminated her employment. Epworth reported to the Department that Ms. Vaughn had misappropriated a resident's property. The Department commenced administrative proceedings against Ms. Vaughn.

¶ 4 The Department asserted that Ms. Vaughn, a certified nurse aide, "is required to comply with the rules and other applicable laws as set out in 63 O.S. §§ 1–1901 et seq.[,]

peal. *Vaughn v. Epworth Villa,* 537 F.3d 1147, 1155 (10th Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 1528, 173 L.Ed.2d 657 (2009).

4. Title 42, § 1396r(e)(2) of the United States Codes provides, in part:

(e) State requirements relating to nursing facility requirements
As a condition of approval of its plan under this subchapter, a State must provide for the following:
. . .
(2) Nurse aide registry
(A) In general
By not later than January 1, 1989, the State shall establish and maintain a registry of all individuals who have satisfactorily completed a nurse aide training and competency evaluation program, or a nurse aide competency evaluation program, approved under paragraph (1) in the State, or any individual described in subsection (f)(2)(B)(ii) of this section or in subparagraph (B), (C), or (D) of section 6901(b)(4) of the Omnibus Budget Reconciliation Act of 1989.
(B) Information in registry
The registry under subparagraph (A) shall provide (in accordance with regulations of the Secretary) for the inclusion of specific documented findings by a State under subsection (g)(1)(C) of this section of resident neglect or abuse or misappropriation of resident property involving an individual listed in the registry, as well as any brief statement of the individual disputing the findings. The State shall make available to the public information in the registry. In the case of inquiries to the registry concerning an individual listed in the registry, any information disclosed concerning such a finding shall also include disclosure of any such statement in the registry relating to the finding or a clear and accurate summary of such a statement.

5. Title 42, section 1396r(g)(1)(C) provides:
(g) Survey and certification process
(1) State and Federal responsibility
(C) Investigation of allegations of resident neglect and abuse and misappropriation of resident property
The State shall provide, through the agency responsible for surveys and certification of nursing facilities under this subsection, for a

Public Health Code–Nursing Home Care Act." The Department alleged that on May 24, 2005, Ms. Vaughn had misappropriated a resident's property by "making copies of a resident's medication records and taking them outside the facility without permission to copy records[,]" which allegation it says it verified. The Department alleged that these acts violated title 42, sections 1396r(e)(2)[4] and 1396r(g)(1)(C)[5] of the United States Code and title 42, sections 483.13,[6] 483.156,[7]

process for the receipt and timely review and investigation of allegations of neglect and abuse and misappropriation of resident property by a nurse aide of a resident in a nursing facility or by another individual used by the facility in providing services to such a resident. The State shall, after notice to the individual involved and a reasonable opportunity for a hearing for the individual to rebut allegations, make a finding as to the accuracy of the allegations. If the State finds that a nurse aide has neglected or abused a resident or misappropriated resident property in a facility, the State shall notify the nurse aide and the registry of such finding. If the State finds that any other individual used by the facility has neglected or abused a resident or misappropriated resident property in a facility, the State shall notify the appropriate licensure authority. A State shall not make a finding that an individual has neglected a resident if the individual demonstrates that such neglect was caused by factors beyond the control of the individual.

6. Title 42, section 483.13 of the CFR provides:
(b) Abuse. The resident has the right to be free from verbal, sexual, physical, and mental abuse, corporal punishment, and involuntary seclusion.
(c) Staff treatment of residents. The facility must develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents and misappropriation of resident property.
(1) The facility must—
(I) Not use verbal, mental, sexual, or physical abuse, corporal punishment, or involuntary seclusion;
(ii) Not employ individuals who have been—
(A) Found guilty of abusing, neglecting, or mistreating residents by a court of law; or
(B) Have had a finding entered into the State nurse aide registry concerning abuse, neglect, mistreatment of residents or misappropriation of their property; and
(iii) Report any knowledge it has of actions by a court of law against an employee, which would indicate unfitness for service as a nurse aide or other facility staff to the State nurse aide registry or licensing authorities.
(2) The facility must ensure that all alleged violations involving mistreatment, neglect, or

and 488.301 [8] of the Code of Federal Regula-

abuse, including injuries of unknown source, and misappropriation of resident property are reported immediately to the administrator of the facility and to other officials in accordance with State law through established procedures (including to the State survey and certification agency).

(3) The facility must have evidence that all alleged violations are thoroughly investigated, and must prevent further potential abuse while the investigation is in progress.

(4) The results of all investigations must be reported to the administrator or his designated representative and to other officials in accordance with State law (including to the State survey and certification agency) within 5 working days of the incident, and if the alleged violation is verified appropriate corrective action must be taken.

7. Title 42, § 483.156 of the CFR provides, in part:

(a) Establishment of registry. The State must establish and maintain a registry of nurse aides that meets the requirement of this section. The registry—

(1) Must include as a minimum the information contained in paragraph (c) of this section:

(2) Must be sufficiently accessible to meet the needs of the public and health care providers promptly;

(3) May include home health aides who have successfully completed a home health aide competency evaluation program approved by the State if home health aides are differentiated from nurse aides; and

(4) Must provide that any response to an inquiry that includes a finding of abuse, neglect, or misappropriation of property also include any statement disputing the finding made by the nurse aide, as provided under paragraph (c)(1)(ix) of this section.

(b) Registry operation.

(1) The State may contract the daily operation and maintenance of the registry to a non-State entity. However, the State must maintain accountability for overall operation of the registry and compliance with these regulations.

(2) Only the State survey and certification agency may place on the registry findings of abuse, neglect, or misappropriation of property.

. . .

(5) The State must provide information on the registry promptly.

(c) Registry Content.

(1) The registry must contain at least the following information on each individual who has successfully completed a nurse aide training and competency evaluation program which meets the requirements of § 483.152 or a competency evaluation which meets the requirements of § 483.154 and has been found by the State to be competent to function as a nurse aide or who may function as a nurse aide because of meeting criteria in § 483.150:

tions (CFR).[9] It did not allege that Vaughn

(I) The individual's full name.

(ii) Information necessary to identify each individual;

(iii) The date the individual became eligible for placement in the registry through successfully completing a nurse aide training and competency evaluation program or competency evaluation program or by meeting the requirements of § 483.150; and

(iv) The following information on any finding by the State survey agency of abuse, neglect, or misappropriation of property by the individual:

(A) Documentation of the State's investigation, including the nature of the allegation and the evidence that led the State to conclude that the allegation was valid;

(B) The date of the hearing, if the individual chose to have one, and its outcome; and

(C) A statement by the individual disputing the allegation, if he or she chooses to make one; and

(D) This information must be included in the registry within 10 working days of the finding and must remain in the registry permanently, unless the finding was made in error, the individual was found not guilty in a court of law, or the State is notified of the individual's death.

. . .

(d) Disclosure of information. The State must—

(1) Disclose all of the information in § 483.156(c)(1)(iii) and (iv) to all requesters and may disclose additional information it deems necessary; and

(2) Promptly provide individuals with all information contained in the registry on them when adverse findings are placed on the registry and upon request. Individuals on the registry must have sufficient opportunity to correct any misstatements or inaccuracies contained in the registry.

8. Title 42, § 488.301 of the CFR provides, in part:

As used in this subpart—

. . . .

Abuse means the willful infliction of injury, unreasonable confinement, intimidation, or punishment with resulting physical harm, pain or mental anguish.

. . . .

Misappropriation of resident property means the deliberate misplacement, exploitation, or wrongful, temporary or permanent use of a resident's belongings or money without the resident's consent.

Neglect means failure to provide goods and services necessary to avoid physical harm, mental anguish, or mental illness.

9. Specifically, the Department alleged: "Respondent's act or actions constitute a violation of the

had violated any state statutory or regulatory laws. The Department requested a hearing "to determine whether the facts as alleged sustain a finding against [Ms. Vaughn] requiring the posting of said finding upon the Nurse Aide Registry of the Oklahoma State Department of Health."

■ ¶ 5 Both Ms. Vaughn and the Department filed motions for summary judgment.[10] In her motion, Ms. Vaughn recited the definition of misappropriation found at section 310:677-1-2 of the OAC and stated that this definition applied. She did not rely on the federal definition of misappropriation found at title 42, section 488.301 of the CFR. As discussed later, the federal and state definitions of misappropriation differ significantly. Ms. Vaughn argued (1) that the medication records were not the patient's property, but Epworth's property; (2) that the photocopying of medication records for use as evidence before the EEOC was beyond the scope of the state and federal rules and regulations; and (3) that her actions were protected by the "special evidentiary privileges which attach to EEOC proceedings."

¶ 6 The Department filed a response and counter motion for summary judgment. It argued that the photocopied pages' content was the resident's property, that the content was confidential under the Health Insurance Portability and Accountability Act of 1996 (HIPAA); that Ms. Vaughn took the medical information without entitlement or the resident's consent and distributed it to a third party; and that Ms. Vaughn's actions consti-

tuted misappropriation of property as defined by section 310:677-1-2 of the OAC, requiring a confirmed finding of misappropriation to be placed on Ms. Vaughn's record on the Oklahoma Nurse Aide Registry (Registry). At the hearing on the motions, the Department clarified that its position is Ms. Vaughn transferred the resident's medical information to a third party. Ms. Vaughn's response to the Department's position was, among other things, that the state statutes and regulations governing the Registry cannot be extended to cover disclosures of patient information because such disclosures are governed by HIPPA.[11]

¶ 7 The Administrative Law Judge (ALJ) found Ms. Vaughn "guilty of the act of misappropriation of property belonging to a Resident." He ordered that the "Nurse Aide Registry shall reflect in its official record and registry that [Ms. Vaughn] is found to have committed the act of misappropriation of property of a Resident." Ms. Vaughn petitioned for review in the district court. Without providing reason or analysis, the district court affirmed the ALJ's decision. Ms. Vaughn filed her petition in error in this Court seeking review of the district court's order. The appeal was assigned to the Court of Civil Appeals. The Court of Civil Appeals focused only on the issue of whether a person has a property right in the person's medical information and found such a right exists. Stating that Ms. Vaughn's acts were an "unauthorized disclosure" and without analyzing the other elements of misappropriation, the

rules and standards and are grounds to sustain a finding of resident misappropriation of property against Respondent pursuant to 42 U.S.C. §§ 1396r (e)(2) and (g)(1)(c); 42 CFR §§ 483.13 and 483.156; and 42 CFR § 488.301."

10. A motion for summary judgment is recognized by the Rules for District Courts, 12 O.S. 2001, ch. 2, app., rule 13, as a mechanism for expediting resolution of civil cases in district courts when there is no dispute as to the facts and the only issue for determination is a legal question. *Akin v. Missouri Pacific Railroad Co.,* 1998 OK 102, ¶ 7, 977 P.2d 1040, 1043. Administrative proceedings are not governed by the Rules for District Courts. Thus rule 13 does not govern administrative proceedings. The Administrative Procedures Act (APA), 75 O.S.Supp. 2005, §§ 250-323, governs proceedings before administrative agencies, unless otherwise specifi-

cally provided. *Id.* § 250.1. Motions for summary judgment are foreign to the APA. Therefore, we view the parties' motions filed in the administrative proceedings as agreements to the facts and as statements of the law. Nonetheless, this opinion will refer to the filings as motions for summary judgment.

11. The parties have maintained these same substantive arguments throughout the proceedings, including before the district court, the Court of Civil Appeals, and this Court. Thus we need not restate them in the discussion of subsequent stages of the proceedings.

Epworth filed an amicus brief in the administrative proceeding. The ALJ and the parties agreed that it should not be considered, and it was not. Because the amicus brief was not considered below, it is not considered here.

Court of Civil Appeals affirmed the trial court.

## II. STANDARD OF REVIEW AND STATUTORY CONSTRUCTION RULES

¶ 8 Review of an agency decision is governed by the APA, title 75, section 322. It provides that a reviewing court

> may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions are:
>
> (a) in violation of constitutional provisions; or
>
> (b) in excess of the statutory authority or jurisdiction of the agency; or
>
> (c) made upon unlawful procedure; or
>
> (d) affected by other error of law; or
>
> (e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
>
> (f) arbitrary or capricious; or
>
> (g) because findings of fact, upon issues essential to the decision were not made although requested.

75 O.S.2001, § 322(1).

■ ¶ 9 In the present case there are no disputed facts, so we must determine if the ALJ's order was free of legal error and was within the Department's authority. Because the issue presented is purely a matter of law, we employ a *de novo* standard. *In re Estate of Jackson*, 2008 OK 83, ¶ 9, 194 P.3d 1269, 1272. Such review is plenary, independent, and non-deferential. *Id.* The Department does not posit that there is a longstanding construction of an ambiguous or uncertain statute such that its interpretation is entitled to deference. *See Bradshaw v. Oklahoma*

*State Election Bd.*, 2004 OK 69, n. 5, 98 P.3d 1092, 1094 ("An agency's longstanding construction of an ambiguous or uncertain statute will not be disturbed without cogent reason.").

■ ¶ 10 This Court has consistently acknowledged: "Where it is necessary to procure a license in order to carry on a chosen profession or business, the power to revoke a license, once granted, and thus destroy in a measure the means of a livelihood, is penal and therefore should be strictly construed." *State ex rel. Okla. State Bd. of Embalmers and Funeral Dirs. v. Guardian Funeral Home*, 1967 OK 141, ¶ 19, 429 P.2d 732, 736 (quoting *Moore v. Vincent*, 1935 OK 763, ¶ 8, 174 Okla. 339, 50 P.2d 388, 389). The loss of a license which is required to work in a given field negatively impacts both a person's livelihood and reputation. *Johnson v. Bd. of Governors of Registered Dentists*, 1996 OK 41, ¶ 19, 913 P.2d 1339, 1345.

¶ 11 Here the Department's regulations requiring a finding of misappropriation of a resident's property to be placed on the Registry deprives a certified nurse aide of the right to work as such. *See* Appendix B attached hereto. Such a finding is the equivalent of permanently revoking the certification since there is no statutory or regulatory limit on the employment ban, and we strictly construe the governing statutes and regulations.

## III. CONTROLLING FEDERAL AUTHORITY

■ ¶ 12 As part of the participation in federal Medicare and Medicaid programs, title 42, section 1396r(e)(2)(A) of the United States Code requires states to establish and maintain a nurse aide registry. Section 1396r(e)(2)(B) mandates that the registry provide "for the inclusion of specific documented findings by a State under subsection (g)(1)(C) of [section 1396r] of resident neglect or abuse or misappropriation of resident property involving an individual listed in the registry, as well as any brief statement of the

individual disputing the findings."[12] Section 1396(g)(1)(C) requires states to "investigate and make findings concerning neglect and abuse and misappropriation of resident property by a nurse aide of a resident in a nursing facility. . . ." Misappropriation of resident property, as defined by the federal regulations, is "the deliberate misplacement, exploitation, or wrongful, temporary or permanent use of a resident's belongings or money without the resident's consent." 42 C.F.R. § 488.301 (2003). As used in the definition of misappropriation, the term "money" is self-explanatory, leaving only the term "belongings" for construction. Because the term "belongings" is not defined in title 42 of the United States Code or in the associated regulations, we turn to its plain and ordinary meaning. *Garcia v. Teitler*, 443 F.3d 202, 207 (2nd Cir.2006); *see Welch v. Crow*, 2009 OK 20, ¶ 10, 206 P.3d 599, 603.

¶ 13 The term "belongings" is defined as goods or effects. *Webster's New International Dictionary of the English Language* 250 (2nd ed.1961). "Effects" means goods or moveables, *id.* at 818, and "goods" is defined as commodities, wares, and portable personal property. *The American Heritage Dictionary* 567 (2nd coll. ed.1982). Thus, "belongings" plain meaning denotes movable items, not an intangible property right in medical information.

¶ 14 Based on the definition of misappropriation in title 42, section 488.301 of the CFR, federal authority does not include disclosure of medical information within the prohibition against misappropriation of a resident's property. In turn, we do not find congressional intent requires that the disclosure of medical information be listed on a nurse aide registry. Our inquiry would end here except that Ms. Vaughn injected the question of whether she had misappropriated a resident's property under the Department's regulation by quoting the definition found at OAC, section 310:677–1–2 and stating that it applies here. *Bd. of Exam'rs of Veterinary Med. v. Mohr*, 1971 OK 64, ¶ 26, 485 P.2d 235, 240 ("[T]he issues in an administrative proceeding are ordinarily limited to those raised by the pleadings."). Thus, we turn to Oklahoma's statutory and regulatory laws.

## IV. OKLAHOMA STATUTORY AUTHORITY

■ ¶ 15 In response to the federal mandate to establish a registry, Oklahoma enacted legislation which is codified at title 63, section 1–1951 of the Oklahoma Statutes and which requires the Department to establish and maintain a registry for certified nurse aides and for nurse aide trainees. 1996 Okla. Sess. Laws 1552–1554, ch. 336, § 8. The registry must provide "a process for notification and investigation of alleged abuse, exploitation or neglect of residents of a facility or home, clients of an agency or center, or of misappropriation of resident or client property." 63 O.S.Supp.2002, § 1–1951(D)(1)(b). Statutorily, the registry must include information on any Department finding of abuse, neglect or exploitation[13] by the certified nurse aide or nurse aide trainee, *id.* § 1–

12. We note for illustrative purposes only the Department's web pages showing the Registry. We do not rely on these pages in reaching our decision today. The Department's Oklahoma Nurse Aide Registry of "Nurse Aides with Abuse and or Conviction Annotations" does not contain any specific documented findings. In fact, it shows Ms. Vaughn to have a charge of abuse, not a charge of misappropriation, pending against her. Oklahoma State Department of Health, http://www.ok.gov/health/pub/wrapper/nrsaid.html (last visited June 23, 2009). As discussed later, this Registry fails to comply with federal regulations as well as Oklahoma legislatively mandated requirements. The first page of the Registry as it appeared on June 19, 2009, is attached as Appendix A with the names and certification numbers redacted.

The Department has a search engine on its web page which allows users to find individual information. The search for Ms. Vaughn on June 19, 2009, cumulated at the Department's web page found at http://www.ok.gov/health/pub/wrapper/naverify.html (last visited June 19, 2009). As with the Registry above, Ms. Vaughn's individualized page shows that she is accused of abuse of a patient, not that she is accused of misappropriation of a resident's property. The page shows her status as "NOT EMPLOYABLE." A copy of Ms. Vaughn's individualized page is attached as Appendix B. Again this page does not comply with federal or Oklahoma legislative mandates.

13. "Exploitation" is not defined in title 63, section 1–1951 of the Oklahoma Statutes or the associated regulations. However, it is statutorily defined elsewhere as "the unjust or improper use of the resources of an incapacitated person, a partially incapacitated person, or a minor for the

1951(D)(3)(a)(4), including the nature of the allegation, documentation of the investigation, evidence supporting the Department's decision to confirm the allegation, hearing date if one was requested, and any statement by the person disputing the finding. *Id.* § 1–1951(D)(3)(a)(4)(a). This provision does not include a requirement that a **finding of misappropriation of resident property** must be posted on the registry.[14] Because this proceeding is penal in nature and requires a strict construction of the statute, we will not insert such a requirement into the statute.[15]

¶ 16 When the Department receives an allegation of abuse, exploitation or neglect, or an allegation of misappropriation of property, it is to make a note on the Registry that the allegation is pending. *Id.* § 1–1951(D)(5). If the Department finds that the allegation was unsubstantiated, then the pending notation is removed. *Id.* If the Department finds that there is a basis for the allegation and gives notice, the accused may request a hearing. *Id.* § 1–1951(D)(6). If, after the hearing, the Department finds that the accused has committed abuse, neglect or exploitation of a resident or client, or misappropriation of resident's or client's property, then the Department must send its findings to the accused, to the district attorney where the violation occurred, and to the Medicaid Fraud Control Unit of the Attorney General's Office. *Id.* § 1–1951(D)(7). The Department must notify the accused of ineligibility to work as a nurse aide in certain nursing home type facilities and of the accused's appeal rights. *Id.* There is no express statutory requirement that a **finding of misappropriation of property** be placed on the Registry, and again we will not insert one.

¶ 17 The statutes require a facility to check the Registry before hiring a person to work as a nurse aide. *Id.* § 1–1951(D)(8). The facility is forbidden to hire someone which the Registry indicates is "personally responsible for abuse, neglect or exploitation." *Id.* Again the statutes do not expressly prohibit a facility from employing someone who has been found to have misappropriated a resident's or client's property.

## V. STATE REGULATIONS

■■■ ¶ 18 The Department has the power and duty under title 63, subsection 1–1951(A)(6) to "[e]xercise all incidental powers as necessary and proper to implement and enforce the provision of this section." Subsection 1–1951(B) requires the State Board of Health to promulgate rules to implement the provisions of section 1–1951.

¶ 19 The Department's definition of "misappropriation of property" deviates significantly from the federal definition found at title 42, section 488.301 of the CFR and discussed earlier in paragraphs 12 through 14. The Department defines "misappropriation of property" as

> the taking, misapplication, deprivation, transfer, or attempted transfer to any person not entitled to receive any property, real or personal, or anything of value belonging to or under the legal control of a resident or client without the effective consent of the resident or client or other appropriate legal authority, or the taking of any action contrary to any duty imposed by federal or state law prescribing conduct relating to the custody or disposition of a resident's/client's property.

OAC, § 310:677–1–2 (Supp.2003).

¶ 20 The Department argued before the ALJ that Vaughn transferred a patient's

---

profit or advantage, pecuniary or otherwise, of a person other than an incapacitated person, a partially incapacitated person, or a minor through the use of undue influence, coercion, harassment, duress, deception, false representation, or false pretense." 30 O.S.2001, § 1–111(A)(6) (as used in the Oklahoma Guardianship and Conservatorship Act, 30 O.S.2001, §§ 1–101 to 4–904). The Department has not alleged that Ms. Vaughn is guilty of exploitation.

14. Again, a review of Appendix A shows that the Registry does not comply with federal mandates and does not comply with the state statutory

mandate of the information which is to be included.

15. In 2002, the Legislature amended title 63, section 1–1951 of the Oklahoma Statutes and inserted the term "misappropriation of property" or "misappropriation of resident or client property" in seven places. 2002 Okla. Sess. Laws 779–781, ch. 230, § 16. However, the Legislature did not include "the misappropriation of property" as a required finding which must be placed on the Registry under title 63, section 1–1951(D)(3)(a)(4) of the Oklahoma Statutes.

property in the form of medical information contained in the photocopied pages to the EEOC without the effective consent of the resident.[16] The definition of transfer is instrumental to the Department's position. In *First Nat'l Bank of Frederick v. Lamb,* 1928 OK 189, ¶ 14, 130 Okla. 301, 267 P. 468, 469, this Court defined "transfer" as the passing of rights in property from one person to another, as the act of delivering or conveying property to another, or as the act of handing over or parting with certain rights in property. This Court also recognized a transfer as the removal of a thing or a right from one place or person to another, the change in control or possession, or a change in title. *Id.* (quoting *In re Peabody,* 154 Cal. 173, 97 P. 184 (1908)). Transfer is also defined as "[a]n act of the parties or law by which the title to property is conveyed from one person to another." Black's Law Dictionary 1342 (5th ed.1979). Yet another source defines transfer as "[t]o convey or shift from one person or place to another[, or] [t]o make over the possession or legal title of to another...." *The American Heritage Dictionary* 1286 (2nd coll. ed.1982). All of these definitions require the removal or severance of the property from one location or from one person to another.

¶ 21 In contrast to the Department's definition of misappropriation, federal HIPAA regulations prohibit the use and disclosure of medical information by a covered entity except under certain circumstances. 45 C.F.R. § 164.502 (2003). The definition of a covered entity is a health plan, a health care clearinghouse, or a health care provider "who transmits any health information in electronic form in connection with a transaction covered by this subchapter." *Id.* at 160.103(3). Disclosure is defined as "the release, transfer, provision of, access to, or divulging in any other manner of information outside the entity holding the information." *Id.* This definition is clear that, although transfer is one component of disclosure, disclosure also includes other methods of divulging information.[17]

¶ 22 Here, Ms. Vaughn may have disclosed resident medical information by divulging it to the EEOC, but she did not transfer a resident's property. The evidence is that Ms. Vaughn took a resident's medical information and disclosed it to the EEOC, but there was no severance of the right to the information or of the information itself from the resident or from Epworth Villa. The Department's definition of misappropriation of property does not include the release or divulging of information. Thus the ALJ erred when it found that Ms. Vaughn had misappropriated a resident's property by transferring information to the EEOC.

¶ 23 Having erred in finding Ms. Vaughn had misappropriated a resident's property under OAC, section 677:310-1-2, the ALJ also erred in ordering the Registry to reflect that Ms. Vaughn had committed the act of misappropriation of a resident's property.[18]

## VI. SUMMARY AND CONCLUSION

¶ 24 We find nothing in the federal statutes or regulations governing the implementation or administration of the nurse aide registry which would support a finding that

16. Although the Department did not make clear in its "Motion for Summary Judgment" that it was not taking the position that Ms. Vaughn had violated a duty imposed by federal or state law, it did clarify this in the hearing. The Department stated at the administrative hearing that its position was based on the allegation that Ms. Vaughn had improperly transferred a resident's property. The Department does not argue that Ms. Vaughn took, misapplied, or deprived any resident of property.

17. In 2007, the Department adopted OAC, section 310:677-5-5(a)(4), which provides in part:

(a) Grounds for certification action against a certified nurse aide may include:

...

(4) Removing medical records or other documentation pertaining to resident care from the employment setting without authorization[.]

If a certified nurse aide is found to have violated this provision, the Department "may deny, suspend, withdraw or not renew certification." OAC, § 310:677-5-5 (Supp.2007). The Department is not required to take an action which would prevent a certified nurse aide from permanently working in the person's chosen profession.

18. Section 310:677-7-4(c) of the OAC provides, in part:

The decision shall direct the nurse aide registry to include the findings as they relate to the certified nurse aide or nurse aide trainee....

Ms. Vaughn misappropriated a resident's property by photocopying some pages of a resident's medication record and providing the photocopies to the EEOC. The photocopying of medical records and providing the photocopies to the EEOC was not a transfer of a resident's property so that the disclosure would be within the definition the Department's regulation 310:677–1–2, defining misappropriation of property. Because the ALJ erred in finding Ms. Vaughn "guilty" of misappropriation of a resident's property, it was also error to order the finding placed on the Registry.

¶ 25 The Court of Civil Appeals' opinion is vacated. The judgment of the trial court affirming the ALJ's order is reversed. The cause is remanded to the district court with instructions to reverse and vacate the ALJ's order and enter judgment in favor of Ms. Vaughn and to order the Department to remove all references from the Oklahoma Nurse Aide Registry that Ms. Vaughn is guilty of misappropriation of property or that Ms. Vaughn is guilty of abuse on May 25, 2005.

**COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; AND CAUSE REMANDED TO DISTRICT COURT WITH INSTRUCTIONS.**

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, KAUGER, WINCHESTER, COLBERT, and REIF, JJ., concur.

WATT, J., (by separate writing) dissents.

Appendix A

Oklahoma State Department of Health

OKLAHOMA
www.ok.gov

Home | Contact | Events & Meetings

Oklahoma State Department of Health

Search OSDH | Go.

[x] Home Button   [x] Calendar Button   [x] Link Button   [x] Search Button

OKLAHOMA STATE DEPARTMENT OF HEALTH

### Oklahoma Nurse Aide Registry
### Nurse Aides with Abuse and or Conviction Annotations
### 6/19/2009

| Last | First | Middle | Abuse Flag | Abuse Date | Conviction | Certificate Num | Test Type |
|------|-------|--------|-----------|-----------|-----------|----------------|-----------|
| ▓▓▓ | ▓▓▓ | | Y | | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | | Y | | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | 4/11/2007 | | ▓▓▓ | Certified Medication Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | 4/11/2007 | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | | | | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | 2/1/2006 | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | 7/27/2005 | | ▓▓▓ | Home Health Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | 7/27/2005 | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | | | | No Certifications |
| ▓▓▓ | ▓▓▓ | ▓ | Y | 12/27/2005 | | ▓▓▓ | Certified Medication Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | 12/27/2005 | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | | Y | | | | No Certifications |
| ▓▓▓ | ▓▓▓ | | Y | | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | | | ▓▓▓ | Home Health Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | | | Y | ▓▓▓ | Home Health Aide |
| ▓▓▓ | ▓▓▓ | ▓ | | | Y | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | 1/13/2005 | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | | | ▓▓▓ | Long Term Care Aide |
| ▓▓▓ | ▓▓▓ | ▓ | Y | 5/10/2005 | | ▓▓▓ | Certified Medication Aide |

## Oklahoma Nurse Aide Registry

### Print Listing

A notice of "PENDING" allegation of abuse is not identified on this website. Facilities may periodically review all aides against the list of aides with abuse notations found on the abuse registry.

| NAME | ABUSE | CERTIFICATION TYPE | CERTIFICATION NUMBER | STATUS | CITY |
|---|---|---|---|---|---|
| Vaughn, Bernadine | ** ABUSE ** | Certified Medication Aide | 37C381800990 | ** NOT EMPLOYABLE ** | Oklahoma City |
| Vaughn, Bernadine | ** ABUSE ** | Long Term Care Aide | 372381800990 | ** NOT EMPLOYABLE ** | Oklahoma City |

Print Date: 6/19/2009

Return to Nurse Aide Registry homepage

WATT, J. dissenting.

¶1 The majority holds that the certified nurse aide's photocopying and dissemination of a patient's records for her own purposes will not support a finding of misappropriation of a resident's property sufficient to require her name to be placed on the Oklahoma Nurse Aide Registry. It does so although the aide's actions violated federal and state law and the patient's statutorily guaranteed privacy rights.[1] Furthermore, it is undisputed that the aide made no attempt to obtain the permission of the patient or the patient's personal representative and disseminated the records without redacting the patient's name.

¶2 The majority opinion ignores the Oklahoma Legislature's acquiescence in agency rules specifically providing for disciplinary proceedings against nurse aides who wrongfully disseminate a patient's medical records. The majority begins its analysis by focusing on a single word, "belongings," located in the legislative definition of misappropriation of property. In so doing, it applies an unnecessarily narrow definition to the term which strips patients of a protected property right. The majority's interpretation of Oklahoma statutory authority does not comply with the interpretive rule requiring that a statute should be considered in its entirety when legislative intent is questioned.[2] Finally, the

1. Title 12 O.S. Supp.2004 § 2503 providing in pertinent part:

   "A. As used in this section:
   ... 4. A communication is 'confidential' if not intended to be disclosed to third persons, except persons present to further the interest of the patient in the consultation examination or interview, persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.
   B. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the

patient's physical, mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.
   C. The privilege may be claimed by the patient, the patient's guardian or conservator or the personal representative of a deceased patient. The person who was the physician or psychotherapist at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the patient...."

2. Relevant portions of a statute and related enactments will be considered together to give force and effect to the whole. *Matter of M.B.,*

majority ignores Oklahoma's legislatively guaranteed right of privacy in medical records and concludes that an individual may avoid the confidentiality protections of Oklahoma law and the Health Insurance Portability and Accountability Act of 1996 (HIPPA) by merely disclosing **a copy of a patient's medical records without consent when disclosure of the original would result in violation of HIPPA provisions.** This is clearly a glaring distinction without even a minuscule difference. In both instances the identical information is being revealed. Information which the patient has every right and expectation to be kept private.

¶ 3 I cannot agree with the majority's interpretation or its analysis. Therefore, I dissent.

**¶ 4 a. Legislative response to requirements for Nurse Aide Registry and acquiescence in agency rules providing for discipline for the removal of medical records from the employment setting.**

¶ 5 Under Federal law, a state must establish and maintain a registry of nurse aides.[3]

Pursuant to federal regulations, a finding on the registry of abuse, neglect, mistreatment of residents, **or misappropriation of their property bars** future employment in facilities receiving Medicare or Medicaid funds.[4] The Oklahoma Legislature enacted identical constraints in 63 O.S. Supp.2006 § 1–1951(D)(7)[5]. **specifically including a provision for notice of ineligibility to work as a nurse aide where clear and convincing evidence establishes a charge of misappropriation of property.**

¶ 6 In accordance with the Administrative Procedures Act, 75 O.S.2001 § 250 et seq., the Legislature delegated the duty and the power to establish a registry for nurse aides and trainees to the Department of Health (Department). In so doing, the Department was charged with the duty to promulgate appropriate rules for the implementation of the same.[6] Administrative rules are valid expressions of lawmaking powers having the force and effect of law.[7] Administrative rules, like statutes are given a sensible construction bearing in mind the evils intended

---

2006 OK 63, fn. 24, 145 P.3d 1040; *Cox v. State ex rel. Dept. of Human Servs.*, 2004 OK 17, ¶ 19, 87 P.3d 607; *Independent School Dist. No. 1–20 of Muskogee County v. Oklahoma State Dept. of Educ.*, 2003 OK 18, ¶ 13, 65 P.3d 612; *Clifton v. Clifton*, 1990 OK 88, ¶ 7, 801 P.2d 693.

**3.** 42 C.F.R. § 482.156(a) (2006) providing in pertinent part:

"(a) Establishment of registry. The State must establish and maintain a registry of nurse aides that meets the requirement of this section...."

**4.** 42 C.F.R. § 483.13 (2006) providing in pertinent part:

"... (c) Staff treatment of residents. The facility must develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents and misappropriation of resident property....
(ii) Not employ individuals who have been—
... (B) Have had a finding entered into the State nurse aide registry concerning abuse, neglect, mistreatment of residents or misappropriation of their property ..."
*Allen v. Department of Health & Human Servs.*, 155 N.C.App. 77, 573 S.E.2d 565 (2002), *review denied*, 357 N.C. 163, 580 S.E.2d 358 (2003).

**5.** Title 63 O.S. Supp.2006 § 1–1951 providing in pertinent part:

"A. The State Department of Health shall have the power and duty to:
... 4. Establish and maintain a registry for certified nurse aides and for nurse aide trainees ...
B. The State Board of Health shall promulgate rules to implement the provisions of this section ...
D.... 7. If the Department after notice and opportunity for hearing determines with clear and convincing evidence that abuse, neglect or exploitation, or misappropriation of resident or client property has occurred and the alleged perpetrator is the person who committed the prohibited act, notice of the findings shall be sent to the nurse aide and to the district attorney for the county where the abuse, neglect or exploitation, or misappropriation of resident or client property occurred and to the Medicaid Fraud Control Unit of the Attorney General's Office. Notice of ineligibility to work as a nurse aide in a long-term care facility, a residential care facility, assisted living facility, day care facility, or any entity that requires certification of nurse aides, and notice of any further appeal rights shall also be sent to the nurse aide."

**6.** *Id.*

**7.** *McClure v. ConocoPhillips Co.*, 2006 OK 42, ¶ 17, 142 P.3d 390.

to be avoided.[8] If an administrative rule is clear and unambiguous, there is no need to resort to rules of construction to ascertain its meaning.[9]

¶7 In connection with its duty to promulgate rules and procedures related to the registry, the Department established the grounds for certification actions against certified nurse aides. The Department specifically outlined "[r]emoving medical records or other documentation pertaining to resident care from the employment setting without authorization" as a ground for certification action.[10] The rule's language is so clear, plain and unmistakable that it is not subject to interpretation and is to be accorded the meaning accorded by the Department.[11]

¶8 If the Legislature disagrees with an agency interpretation, it may: 1) delay, suspend, veto or amend any rule or proposed rule under review by joint resolution;[12] 2) disapprove a permanent or emergency rule at any time if it determines the rule to be inconsistent with legislative intent;[13] or 3) make emergency rules ineffective through its disapproval.[14] Such legislative action has not been implemented. Furthermore, at least two Legislatures have convened and recessed since the rule allowing discipline was instituted in 2006 without rejecting the same. The Legislature's silence is proof of the lawmakers' consent[15] and its adoption of the administrative construction[16]. specifically allowing the instigation of disciplinary proceedings for the precise situation presented here, a nurse aide's unauthorized dissemination of medical records.

---

**8.** *Walker v. Group Health Serv., Inc.*, 2001 OK 2, ¶27, 37 P.3d 749; *Oklahoma Alcoholic Beverage Control Bd. v. Burris*, 1980 OK 58, ¶13, 626 P.2d 1316, 20 A.L.R.4th 593.

**9.** *Coppola v. Fulton*, 1991 OK 18, ¶12, 809 P.2d 1291; *Mayfield v. H.B. Oil & Gas*, 1987 OK 106, ¶9, 745 P.2d 732.

**10.** OAC 310:677–5–5 (2007) providing in pertinent part:

"(a) Grounds for certification action against a certified nurse aide may include:
... (4) Removing medical records or other documentation pertaining to resident care from the employment setting without authorization ..."

**11.** *Tyler v. Shelter Mut. Ins. Co.*, see note 20, infra; *Wylie v. Chesser*, see note 20, infra; *Wilson v. Catoosa Public Schools*, see note 20, infra.

**12.** Title 75 O.S.2001 § 250.2(B)(4) providing:

"B. In creating agencies and designating their functions and purposes, the Legislature may delegate rule making authority to these agencies to facilitate administration of legislative policy. The delegation of rule making authority is intended to eliminate the necessity of establishing every administrative aspect of general public policy by legislation. In so doing, however, the Legislature reserves to itself: (4) The right to approve, delay, suspend, veto, or amend the implementation of any rule or proposed rule while under review by the Legislature by joint resolution."

**13.** Title 75 O.S. 201 § 250.2(B)(5) providing in pertinent part:

"B ... [t]he Legislature reserves to itself:
5. The rights to disapprove a proposed rule or amendment to a rule during the legislative review period independent of any action by the Governor by a concurrent resolution."

**14.** Title 75 O.S.2001 § 250.2(B)(6) providing in pertinent part:

"B ... [t]he Legislature reserves to itself:
6. The right to disapprove a permanent or emergency rule at any time if the Legislature determines such rule to be an imminent harm to the health, safety or welfare of the public or the state or if the Legislature determines that a rule is not consistent with legislative intent."
Title 75 O.S.2001 § 253(H)(2) (2001) providing:
2. Any promulgated emergency rule shall be made ineffective if:
a. disapproved by the Legislature;
b. superseded by the promulgation of permanent rules;
c. any adopted rules based upon such emergency rules are subsequently disapproved pursuant to Section 308 of this title, or
d. an earlier expiration date is specified by the agency in the rules."

**15.** *McClure v. ConocoPhillips Co.*, see note 7, supra; *Walker v. Group Health Servs., Inc.*, see note 8, supra; *First of McAlester Corp. v. Oklahoma Tax Comm'n*, 1985 OK 52, ¶14, 709 P.2d 1026; *Peterson v. Oklahoma Tax Comm'n*, 1964 OK 78, ¶16, 395 P.2d 388.

**16.** *Branch Trucking Co. v. State ex rel. Oklahoma Tax Comm'n*, 1990 OK 41, ¶6, 801 P.2d 686; *Oral Roberts Univ. v. Oklahoma Tax Comm'n*, 1985 OK 97, ¶17, 714 P.2d 1013.

¶ 9 b. "Belongings" as encompassed within controlling federal authority includes a person's private medical records in which the patient has a personal property interest and a legislatively recognized right of privacy.

¶ 10 The majority acknowledges that federal regulations relating to the Medicare and Medicaid programs define misappropriation of resident property as "the deliberate misplacement, exploitation, or wrongful, temporary or permanent use of a resident's belongings or money without the resident's consent." [17] It then goes on to define the term "belongings" narrowly as a "movable item, not an intangible property right." The interpretation ignores patients' property interests and legislatively recognized rights of privacy in medical records. It makes light of one's most precious possession, their state of health, and the records pertaining thereto. One's health is personal and precious to an individual and only to that individual, exponentially more so than any "moveable item" like cash or jewelry which the majority holds so dear.

¶ 11 I would define the term "belongings" as at least two courts have done in unpublished opinions as inclusive of medical records. The Los Angeles County Superior Court referred to belongings as including all of an individual's medical records.[18] The United States District Court of the Northern District of Illinois has done the same.[19]

¶ 12 In Hayter v. Kuttler, 185 Cal.App.2d 189, 8 Cal.Rptr. 160 (1960), the California Court rejected an argument that the term "my belongings" should be restricted to tangible personal property. Instead, it determined that "belongings" should be given a broader definition and be considered inclusive of personal property of every nature, both real and intangible. Most certainly, the Hayter court would have included medical records within the definition of "belongings" as intangible personal property.

¶ 13 The majority's characterization of medical records as not being the property of the patient simply cannot be sustained. In Pyramid Life Ins. Co. v. Masonic Hosp. Ass'n of Payne County, 191 F.Supp. 51 (W.D.Okla.1961), the federal court recognized that a keeper of medical records is only the custodian of such records. The keeper may own the medium upon which the information is stored. Nevertheless, the court determined the facility holding such records did not have the right to possess and use the information to the exclusion of the patient, the patient's representative, or those standing in the patient's shoes. Furthermore, the court acknowledged that there were restrictions on the release of the medical records when the patient had not given permission for the same. Finally, the opinion specifically provides that "[t]he patient has a property right in the information appearing or portrayed on the records …".

¶ 14 The term "belongings" as utilized in federal regulations intended to protect patient's rights is sufficiently broad to include an individual's private medical records in which the patient has a personal property right. It should not be construed so narrowly as to degrade a patient's property rights associated with the information contained in medical records.

¶ 15 c. When 63 O.S. Supp.2006 § 1–1951 is considered in its entirety, it is clear that a nurse aide who misappropriates a resident's or client's property is intended to be included on the registry as ineligible for employment.

¶ 16 The majority relies on a portion of 63 O.S. Supp.2006 § 1–1951(D) for the proposition that misappropriation of a patient's or client's property was not intended to support inclusion of a nurse aide's name on the registry. The portion of the statute relied upon is

17. 42 C.F.R. § 488.301 (2003) providing in pertinent part:
"… Misappropriation of resident property means the deliberate misplacement, exploitation, or wrongful, temporary or permanent use of a resident's belongings or money without the resident's consent…."

18. Huang v. LTM Total Care, Inc., 2007 WL 3054207 (Cal.App. 2 Dist.).

19. Clark v. Stahl, 2000 WL 631306 (N.D.Ill.)

63 O.S. Supp.2006 § 1–1951(D)(3)(a)(4) providing in pertinent part:

"... The registry shall include, **but not be limited to,** the following information on each certified nurse aide or nurse aide trainee:

... (4) information on any finding of the Department of abuse, neglect, or exploitation by the certified nurse aide or nurse aide trainee ..." [Emphasis provided.]

The majority does not consider subsection 7 of the same statutory provision providing:

"If the Department after notice and opportunity for hearing determines with clear and convincing evidence that **abuse, neglect or exploitation, or misappropriation of resident or client property has occurred** and the alleged perpetrator is the person who committed the prohibited act, notice of the findings shall be sent to the nurse aide and to the district attorney for the county where the **abuse, neglect or exploitation, or misappropriation of resident or client property occurred** and to the Medicaid Fraud Control Unit of the Attorney General's Office. **Notice of ineligibility to work as a nurse aide in a long-term care facility, a residential care facility, assisted living facility, day care facility, or any entity that requires certification of nurse aides, and notice of any further appeal rights shall also be sent to the nurse aide."**

Clearly and unmistakably,[20] this subsection makes it plain that where clear and convincing evidence has established the "misappropriation of resident or client property" it is required that notice of ineligibility to work shall be given.

**20.** If a statute is plain and unambiguous and its meaning clear, no occasion exists for the rules of construction. Rather, the statute will be accorded the meaning expressed by the legislative language utilized. *Tyler v. Shelter Mut. Ins. Co.,* 2008 OK 9, fn. 1, 184 P.3d 496; *Wylie v. Chesser,* 2007 OK 81, ¶ 19, 173 P.3d 64; *Wilson v. Catoosa Public Schools,* 2007 OK 20, ¶ 11, 157 P.3d 1149.

**21.** Title 12 O.S. Supp.2004 § 2503, see note 1, supra.

¶ 17 **d. An individual may not avoid the confidentiality protections in medical records established by Oklahoma legislative provisions and of HIPPA by merely disclosing a copy of a patient's medical records without consent when disclosure of the original would result in violation of HIPPA provisions.**

¶ 18 The majority recognizes that "federal HIPPA regulations prohibit the use and disclosure of medical information by a covered entity except under certain circumstances." Additionally, it acknowledges that the aide disclosed resident medical information but nonsensically determines that there was no "transfer" of the patient's property as only a copy of the protected medical information was transmitted to the EEOC.

¶ 19 The majority's analysis fails to recognize that the Oklahoma Legislature has specifically provided patients with protection from the wrongful dissemination of medical records. Title 12 O.S. Supp.2004 § 2503 provides that "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential" medical information. The guaranteed protection does not end with the loss of life, but extends to the patient's personal representative.[21]

¶ 20 Furthermore, the majority's reasoning simply cannot be supported by HIPAA and its provisions. Under HIPAA, a person who discloses individually identifiable health information to another person "shall" be punished by a fine not to exceed $50,000, imprisonment of not more than a year, or both.[22] The aide made such a disclosure. Furthermore, she did not dispute the fact that she had violated HIPAA standards in a cause brought in the federal district court based on the identical facts presented here.

**22.** Title 42 U.S.C. § 1320d–6 (2009) providing in pertinent part:

"... (a) Offense
A person who knowingly and in violation of this part—
... (3) discloses individually identifiable health information to another person ...
(b) Penalties
A person described in subsection (a) of this section shall—
(1) be fined not ore than $500,000, imprisoned not more than 1 year, or both ...."

¶ 21 In *Vaughn v. Villa*, 2006 WL 2987728 (W.D.Okla.) [Summary judgment in favor of the employer affirmed in *Vaughn v. Epworth Villa*, 537 F.3d 1147 (10th Cir.2008) ],[23] the district court notes:

"... It is undisputed that plaintiff's disclosure of the confidential health information of one of defendant's patients violated defendant's policies, its employee conduct and work rules and HIPAA regulations...."

In the appellate decision, the 10th Circuit stated the following:

"... In addition to violating Epworth Villa's policies and procedures, and perhaps Oklahoma law, it also appears that Vaughn's conduct may have violated federal law. Under the terms of the federal Health Insurance Portability Accountability Act ('HIPAA'), '[a] covered entity may not use or disclose protected health information, except as permitted or required by this subpart.' 45 C.F.R. § 164.502(a). 'Protected health information' includes 'individually identifiable health information' that is '[t]**ransmitted or maintained in any ... form or medium.'** 45 C.F.R. § 160.103. 'Individually identifiable health information,' meanwhile, '[i]s created or received by a health care provider ...; and ... [r]elates to the past, present, or future physical or mental health or condition of an individual ... and ... identifies the individual ..." *Id.*

Vaughn does not appear to dispute that the medical information she transmitted to the EEOC was 'protected health information' or that Epworth Villa is a 'covered entity.' Instead, Vaughn contends that her conduct was excepted from HIPAA under 45 C.F.R. § 164.502(j), the whistleblower exception. This argument in [sic] unavailable for several reasons. Most basically, however, the whistleblower exception only applies to disclosures made to a 'health oversight agency or public health

authority,' or '[a]n attorney retained by or on behalf of the' whistleblower, none of which is the EEOC. *Id.*" [Emphasis provided.]

As the Tenth Circuit makes clear, federal regulations govern "transmitted" medical records, precisely the situation presented here when the nurse provided copies of the patient's medical records to the EEOC.

¶ 22 Whether a copy or an original, the information sent to the EEOC by the aide was unquestionably a criminal act under HIPAA which would support a fine of up to $50,000 and a year in jail. It was also confidential information protected by Oklahoma law.[24]

## CONCLUSION

¶ 23 In its zeal to protect a nurse aide who may be subject to criminal proceedings for her actions, the majority ignores Department rules in which the Legislature has acquiesced and which clearly, plainly, and unmistakably contemplate that a nurse aide who wrongfully disseminates a patient's medical records will be disciplined. It utilizes a tortured statutory analysis of a single term, "belongings," to conclude that there is nothing which would support a finding that the aide misappropriated a resident's property by photocopying the resident's medication record and providing the same to the EEOC. In order to reach its result, the majority ignores statutory rules of construction providing for the consideration of all relevant statutory provisions as a whole; and it turns it's back on both state and federal statutorily protected rights of privacy in medical records.

¶ 24 It is clear from agency rules, in which the Oklahoma Legislature has acquiesced, that nurse aides are intended to be disciplined for the unauthorized dissemination of a patient's medical records. It is also apparent that the term "belongings" as utilized in

---

**23.** See, also, *Gratton v. United Parcel Serv., Inc.*, 2008 WL 4934056 (E.D.N.Y.) holding that a treatment summary relating to a social worker's treatment of an employee, who brought an action against her employer alleging gender discrimination, and the portion of the social worker's deposition transcript discussing the summary contained protected health information that was barred from disclosure by the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

**24.** Title 12 O.S. Supp.2004 § 2503, see note 1, supra.

state and federal regulations is sufficiently broad to include an individual's private medical records in which the patient has a personal property right. Furthermore, both the federal and state governments have recognized a patient's right of privacy in such records and provided for protection of the same. The majority does not extend the patient these statutorily guaranteed rights. Therefore, I dissent.